The declaration contained an averment that the defendant's intestate died before the Indian claim was extinguished, and the breach assigned was, "that the defendants had not made to the plaintiff a title to the land." Pleas, non assumpsit and the statute of limitations. To the latter, replication, "that the plaintiff was and had ever been a citizen and inhabitant of the State of South Carolina, and had not been at any time, from 1 January, 1818, to the commencement of this suit, within the State of North Carolina." It was admitted that the Indian title to the land was extinguished in the year 1819. There was a general demurrer to the replication, which was overruled by his Honor, Judge Ruffin, a verdict was found for the plaintiff, upon the plea of non assumpsit, and judgment rendered accordingly, from which the defendants appealed.
A principal question in this case arises (17) upon the construction of the ninth section of the act of 1715, Rev., ch. 2, which gives further time to plaintiffs beyond seas to bring their actions, provided they do so within a certain time after their return, and that question is, *Page 13 
whether the words beyond seas mean that plaintiffs not beyond seas, but without the limits of the State, are within that saving. If that meaning is given to them, it is not because that is their natural import; they certainly have another meaning, to wit, what they plainly express, 1 W. Bl., 286, and so the Court thought in Ward v. Hallam, 2 Dall., 217. In that case the plaintiff was a citizen and resident of South Carolina, and it was held that he was not beyond seas, consequently not within the saving of the statute of limitations. See, also, Kirby, 299. In Maryland it seems to have been ruled otherwise (1 Harris and McHen., 89), and also in the Supreme Court of the United States, 3 Wheaton, 541.
Our act of limitation was passed in 1715, the first year (as we learn from our statute-books) of our colonial legislation. The territory then inhabitated, and the number of colonists, were very limited; we were rather an adjunct to Virginia than a distinct colony; we had little or no intercourse with any country, except Great Britain. It is most probable, in this state of things, that the saving in favor of plaintiffs was inserted in favor of British creditors, and not in favor of creditors who were only separated from their debtors by colonial limits.
If this was originally the fact when the act passed; if the saving was intended, as is expressed, only for British creditors and others really and literally beyond seas, shall we now give it a quite different and opposite construction, and allege as a reason that the state of things is much altered since the enactment of the law; or shall we not rather wait until it is the pleasure of the Legislature to make the alteration, as has been done in Massachusetts, 3 Mass. 271, and in New York, 3 Johnson, 263?
This question came before the six judges of this (18) State, in 1811, Whitlocke v. Walton, 6 N.C. 23. They held that the saving in the statute of limitation, as to plaintiffs beyond seas, did not extend to persons resident in other States of the Union. They considered that it would be mischievous that citizens of other States, particularly adjoining ones, with whom we have the greatest intercourse, should be permitted, at any remote period, to bring suit against the citizens of this State.
It does not appear, from an examination of the contract sued upon, that there has been any breach of it. The defendant's intestate died before the Indian title became extinct, in 1819. He therefore was prevented from a compliance by the act of God. Gwillam's Bacon, Condition, q., 1 Co. Lit., 218. *Page 14 
Nothing can be charged against the defendants. On this point, however, it is unnecessary to give an opinion.
I am of opinion that the rule for a new trial should be made absolute.