*56
 
 Pearson, J.
 

 Jacob McCraw died in 1815, leaving a will; by which he devised the tract of land, set out in the bill, to his wife for life, with remainder to his two sons, James and Samuel McCraw, as tenants in common. In June 1817, Samuel McCraw executed a bond to James in the.penal.sum of $2500 to convey his half of the land to the said James. ..Samuel died intestate and without issue in 1817. James died in 1S26, leaving a will by which William Davis was appointed his executor, and leaving inany children, who with the said Davis and Gwin, are the defendants. In 1836, the widow died; and the bond for title was then proven and registered, and Davis administered upon the estate of Samuel iVlcCraw, and made
 
 title
 
 under the bond
 
 to the
 
 children of James, who sold and conveyed the one half oí the land to the defendant, Gwin, who had before, as a purchaser under a deed of the said James to certain persons in trust, become the owner of the other half.
 

 The plaintiffs, together with the children of James McCraw, are the heirs at law of Samuel. They allege, that, at the time the said Samuel executed the bond for title, and before, and afterwards up to his death, he was a beastly drunkard, and had become imbecile and totally incapable of transacting business of any kind; and that, taking advantage of his helplessness and want of capacity, his brother James induced him to execute the bond for title, and ‘‘defrauded him out of his land without any, or if any, but a small, consideration.”
 

 The prayer is, “that this Court will declare and decree, that the plaintiffs recover their interest, according to their respective rights, in said land,”
 

 The defendants admit, that in 1819 Samuel McCraw wste very intemperate ; and they admit, that in 1817- he would sometimes get drunk, but they deny, that, during-that year, he was incapable of attending to his business. On the contrary they allege, that he was fully capable of
 
 *57
 
 doing any kind of business, and was a man of good sense and ability. They allege, that, at the time he executed the bond for title, in pursuance of a previous contract, he was entirely sober and competent to do business. They deny, that the land was obtained from him by fraud and without any, or but a small consideration. On the contrary they allege, that the price agreed on was $1250, which 'Was the full value, as it was encumbered with a life estate ; that, at the time the bond was executed, a part of the price was paid and the halance was secured by the notes'of James McCraw, which he then executed and delivered to Samuel, and which he aftefwai’ds satisfied, although they admit, that after the lapse of so many years, they are not able to produce the bonds, which, they suppose, were not taken care of after being paid and can-celled.
 

 If the bond is void on account of the alleged fraud, we do not think the deed executed by Davis,the administrator, under the power vested in him by the statute, would stand in the way of the plaintiffs and prevent them from setting up their original equity; for the power to make title rests on the bond, and, if that fails, the title must fail.
 

 For this reason we have examined the proofs, which are very voluminous on both sides, to see if the allegation of the bill is sustained, and we are satisfied, that, sq far from being sustained, it i$ wholly disproved. 'William Davis and Martin Cloud, the two subscribing witnesses, both swear, that, at the time Samuel McCraw executed the bond, he was perfectly sober and capable of doing business; that the consideration agreed on was $1250, which was a fair price; that a part was then paid by the satisfaction of a debt, which Samuel owed to the witness, Cloud, and also a debt due the witness Davis, and that the balance was secured by notes, which James1 then executed in pursuance of the contract.
 

 
 *58
 
 . These witnesses are fully sustained by the weight of the evidence as to the capacity of Samuel, who did not become a confirmed drunkard until some time after the year 1817, and who spoke of the contract to several ofthe witnesses and expressed himself satisfied.
 

 When a deed is assailed on the ground of fraud, and the allegation is not made good, plaintiffs are not in general allowed to fall back upon any secondary
 
 equity
 
 — Adams
 
 on Equity,
 
 164, (176,) and they are never allowed to do so, unless such secondary equity is distinctly set out in the bill and relied on as an alternative, so as to give to the defendant full notice and an opportunity to meet the bill in both of its aspects.
 

 Per Curiam. Bill dismissed with costs.