'S. L. LOVE et al., Ex'trs, et als. v. R. V. WELCH.

*Specific Performance—Statute of Frauds—Pleading.*

1. If one agrees in writing to convey land in consideration of the verbal promise of the vendee to pay the price, the contract is binding on the vendor, although the vendee may avoid the obligation on his part, if he chooses to plead the statute of frauds.

2. In such case, the fact that the vendor is bound while the vendee is not, will be considered in passing on a demand for specific performance by the vendee, and if the vendee has allowed much time to elapse, specific performance will not be decreed.

3. So, where a vendee who was not bound in writing to pay the purchase money, allowed thirty years to pass before he asked for specific performance, during all of which time he had not tendered payment, and did not offer any excuse for his long delay, specific performance was refused.

4. The specific performance of the vendor's agreement to convey land is not a strict right to be enforced at the will of the vendee, but it rests in the sound discretion of the Judge, such discretion to be governed by the rules laid down by the Courts of Equity in this respect.

5. Where the counter-claim asking for specific performance, alleged that the purchase money was paid in full, but the jury found that this had not been done; *It was held,* that the defendant was not entitled to specific performance in this state of the pleadings.

(*Mizell* v. *Burnett,* 4 Jones, 249; *Green* v. *The Railroad,* 77 N. C., 95; *Cannaday* v. *Shepard,* 2 Jones Eq., 224; *Lloyd* v. *Wheatley,* Ibid., 267; *Herren* v. *Rich,* 95 N. C., 500; cited and approved).

CIVIL ACTION, tried before *Avery, Judge,* and a jury, at Fall Term, 1886, of HAYWOOD Superior Court.

This action, begun on the 12th day of February, 1885, by two of the four executors of James R. Love, of the others, one having died, and the other became insane since their qualification, to whom were afterwards added the other plaintiffs, (the heirs at law and devisees of the testator, and the husbands of such as were married,) is to have declared null certain deeds for land, bearing the signature and seal of the testator, alleged to have been delivered to the defendant without authority from the testator, and registered in the county.

The answer controverts these allegations; declares that full payment of the purchase money for both tracts has been made, and possession taken and maintained by the defendant for a long series of years; and as a claim for affirmative relief, demands that title be made to him for the 1757 acre tract described in the first article of the complaint, for which no deed had been given by the testator. Issues were submitted, and responded to as follows:

I. Were the deeds mentioned in the complaint delivered by James R. Love to his agent, P. W. Edwards, without the knowledge of the defendant Welch, and with instructions to retain said deeds in his possession until the defendant Welch should surrender to said Edwards certain bonds or evidences of title to land?

Answer—No.

II. Were the said deeds delivered by James R. Love to said Edwards, with instructions to deliver them to defendant Welch, and did said Edwards deliver said deeds in accordance with said instructions from James R. Love?

Answer—Yes.

III. Did the said Edwards deliver said deeds to Samuel L. Love, one of the executors of James R. Love, and did Samuel L. Love deliver said deeds to the defendant R. V. Welch, before the conditions prescribed by James R. Love as precedent to their delivery were performed by said Welch?

Answer—No.

IV. Were the said deeds delivered to the defendant Welch after the death of James R. Love?

Answer—Yes.

V. Did James R. Love contract and agree with defendant R. V. Welch before the date of said deeds, to convey to him the land covered by the deeds, and did defendant pay the price agreed to James R. Love for said land?

Answer—No.

VI. Did James R. Love contract and agree with defendant Welch to convey the 1757 acre tract mentioned in defendant's answer, and covered by the paper signed by J. R. Love, upon the payment of a price agreed, as alleged, on 28th November, 1854?

Answer—Yes.

VII. Has the defendant paid the purchase money so agreed upon as the price of said last named tract?

Answer—No.

VIII. Was the instruction given to, or the understanding had between J. R. Love and Edwards, when said deeds were delivered to Edwards, in reference to said deeds, such, that under the terms of such instructions or agreement, said Love had the power to take said deeds out of the hands of Edwards at any time before delivery to defendant?

Answer—No.

Upon the verdict, the following judgment was rendered:

"This cause coming on to be heard upon the issues and the responses thereto by the jury, upon motion of counsel, it is ordered and adjudged by the Court, that the defendant is the owner of the twenty-seven hundred acre tract of land mentioned in the pleadings, and that plaintiffs are in law and equity the owners of the seventeen hundred and fifty-seven acre tract of land described in the survey appended to the defendant's answer, and mentioned in the pleadings, and that defendant is not entitled to conveyance for said land. And it is further ordered, that the defendant recover the

costs of this action, to be taxed by the clerk of Haywood county."

The only evidence of the contract for the sale of the 1750, more accurately 1757 acre tract, is contained in the following writing:

" P. W. EDWARDS,

SIR—You will run for R. V. Welch all the lands from his lower line between him and the Plott line, and keeping a straight course to the top of the ridge which divides the two Richlands. I mean our fork and the Allen fork, keeping that main ridge to where the grassy ridge leaves the same, keeping down the grassy ridge to a stake on the original Allison line, then with that line to the "Ashe corner," at the head of a prong of Scott's creek, near the wagon road, as I have sold him all my interest in the same at the rates of fifteen cents per acre.

· (Signed)          J. R. LOVE.

November 28, 1854."

The land was accordingly surveyed as directed in this note, but no deed conveying it was ever executed, nor was there any evidence of the defendant's being in possession of any part of the tract, while it was conceded he did have possession of a portion of the 2700 acre tract, described in the second article of the complaint, as a tenant in common with the testator, and had acquired such possession before the date of the deed therefor to him.

It was in evidence, that the smaller tract had greatly advanced in value since November, 1854, the date of the letter to the surveyor, and was now worth from one to three dollars per acre. The answer averred full payment for both tracts, while the verdict establishes the contrary as to the smaller, if not as to both.

From so much of the judgment as refuses specific performance of the alleged contract to convey the 1757 acre tract, on payment of the purchase money specified therein, the defendant appeals.

*Mr. R. D. Gilmer,* for the plaintiffs.
*Messrs. R. T. Gray, W. B. Furguson* and *John Devereux, Jr.,* for the defendant.

Smith, C. J., (after stating the facts).   It is to be observed, that the defendant has never entered into a written contract to bind himself to pay for the land, and this is as necessary to impose an obligation on the vendee as it is upon the vendor.   It is only required by the statute that the written instrument be signed by the party to be charged, or some one authorized on his behalf, and hence one may be bound and the other not by the contract.   It is so ruled in *Mizell* v. *Burnett,* 4 Jones, 249, in which Pearson, J., delivering the opinion, says: " If one agrees in writing to convey land, in consideration of a verbal promise of the other party to pay the price, the contract is binding on the vendor, although the vendee may avoid the obligation on his part, if he chooses to protect himself under the provisions of the statute." To same effect in *Green* v. *N. C. R. R. Co.,* 77 N. C., 95.

The difference in the relations of the parties to the contract, its obligation resting on one, and incapable of being enforced against the other, if he chooses to resist, must be considered in passing upon a demand for specific performance, and particularly the reasonableness of the delay in making it.   " If the one is bound and the other *foot-loose,*" (we quote from the same opinion,) " the time must be short, for it would be *unreasonable to keep the parties in so unequal a condition for a long time.*"

Here the evidence of the contract is contained in a written direction to the surveyor, given more than thirty years before the present suit was commenced, without any action on the part of the defendant, who alone could enforce it; without excuse for or explanation of the delay, and without paying any part of the inconsiderable sum due as purchase money. The vendor, and those who succeeded him, could not compel its payment, because no legal obligation rested upon the defendant, and if he had been bound by a written but unsealed instrument, the statute of limitation would have interposed a barrier to the recovery.

The defendant's long slumber upon his now asserted right, if not, unexplained, an abandonment, is strong evidence of an intent to abandon it.

Again, during this long period of inactivity, the value of the property has advanced from fifteen cents to from one to three dollars per acre; and it is only when awakened by the plaintiffs' action upon an asserted equity to have all the lands restored, and the supposed deeds annulled, that, without having paid any of the purchase money, he asks the Court to make the plaintiff convey the title to the smaller tract to him, on payment of the purchase money. Is this claim to be upheld, and has it any support in the equity which the Court administers? The answer is found in an extract taken from 2 Story's Equity Jurisprudence, §771: "In general, it may be stated, that to entitle a party to a specific performance, he must show that *he has been in no default* in not having performed the agreement, and that he has taken all proper steps towards the performance on his part. If he has been guilty of gross *laches,* or if he applies for relief *after a long lapse of time, unexplained by equitable circumstances,* his bill will be dismissed."

The exercise of this form of remedial power, while in one sense discretionary, yet the discretion is not arbitrary, but is "controlled and governed by the principles and rules of

equity to be found in the adjudicated cases," (Pom. Cont. §36,) and hence we have considered the case in the light of them. 2 Story's Eq. Jur., §742; *Cannaday* v. *Shepard,* 2 Jones Eq., 224; *Lloyd* v. *Wheatley,* Ibid., 267; *Herren* v. *Rich,* 95 N. C., 500.

Again, his case is not properly presented before the Court in the answer, which, upon an allegation of payment, demands an unconditional conveyance of the title, while the fact is found by the jury that none of the consideration has been paid.

The only exception taken by the appellant is to the refusal of the Court to render judgment for a specific performance of the contract upon payment of the purchase money for the 1757 acre tract, and in this ruling we concur.

There is no error.    Judgment affirmed.

No error.                                                Affirmed.