JANE MILLS, Surviving Executrix of L. A. MILLS v. SHAKESPEAR
HARRIS, Administrator et al.

*Conversion— Will—Election —Descent— Conveyance—Adminis-
tration.*

1. Where realty is devised to be sold and the proceeds divided at the
   death of the testator, it is, by construction of law converted into
   personalty, and the rules governing the devolution of that species
   of property become applicable.

2. To constitute such constructive conversion, it is essential that the
   power conferred to sell shall be *imperative ;* if the power is left to
   the *discretion* of the person charged with it, no conversion results.

3. Where the persons upon whom a discretionary power to sell was con-
   ferred by devise, contracted verbally, to sell the land, and let
   the purchaser into possession, who paid a portion of the purchase
   money ; *Held*—(1) that this did not create an actual conversion,
   inasmuch as the contract was not enforcible; and (2) that the con-
   veyance by an executor of the land, after the deaths of those
   originally entitled to it or its proceeds, could not operate retro-
   actively, so as to change the order of descent.

This was a CIVIL ACTION, tried at the September Term,
1889, of RUTHERFORD Superior Court, before *Boykin, J.,*
brought by the plaintiff executrix for construction of a
will.

L. A. Mills died on the 22d day of October, 1882, leav-
ing a last will and testament, which was duly admitted to
probate, and by said will he appointed Mrs. Jane Mills, the
plaintiff, his wife; L. A. Mills, Jr, his son, and his daughter,
Mary Jane Harris, his executors, all of whom were duly
qualified as such, and letters testamentary were issued to
them, and they all entered upon the duties of the office of
executor previous to the sale of the tract of land herein-

after mentioned. L. A. Mills, Jr., and Mary Jane Harris were the only heirs at law of said testator.

The clause of said will asked to be construed in this action is in the following words, to-wit:

" I authorize my executors to sell, either at public or private sale, my place, called the 'upper place,' now rented to John Smith, if they see fit to do so, and divide the proceeds of the sale equally between my son and daughter."

Soon after the death of the testator, all his executors contracted verbally to sell to one A. H. Nabers the " upper place," mentioned in said clause of the will, each one of said executors agreeing to said sale.

The said A. H. Nabers paid to L. A. Mills, Jr., one of said executors, at the time of the land trade, the sum of one thousand dollars of the purchase money, and afterwards made other payments to him, and said Nabers paid to Mrs. Mary Jane Harris the sum of eight hundred dollars of the purchase money, and since the death of plaintiff's co-executors said Nabers has paid to plaintiff the sum of seven hundred and thirty-five dollars of the purchase money, and plaintiff, as sole surviving executrix, has, in pursuance of said agreement, executed to said Nabers a deed to said land, and has taken a mortgage upon the same to secure the balance of the purchase money. At the time of the land trade above mentioned Nabers took possession of the land, and has continued in possession since that time.

Mrs. Mary Jane Harris, executrix, died intestate on the 11th day of April, 1883, leaving no children, and on the 10th day of November, 1885, L. A. Mills, Jr., died intestate, leaving children, the defendants, Ethel, Eugenia, Henry and Ladson, leaving plaintiff the sole surviving executrix.

The defendant J. S. Harris was the husband of the deceased executrix Mary Jane, and has been duly qualified as her administrator, and has entered upon the duties of that office.

Upon the foregoing facts, on motion, it was ordered by the Court that Mrs. Jane Mills, executrix, the plaintiff, pay over to the defendant J. S. Harris the one-half of the moneys arising from the sale of said land, after deducting any amount which he has received, if any, and that the said J. S. Harris, as administrator of his wife, have judgment and recover of the plaintiff the sum of _____ dollars.

It was further ordered that this cause be referred to the Clerk of this Court to ascertain the amount due said Harris and the other defendants, and that he report to this Court the same, that judgment may be entered accordingly.

Defendants Otis P. Mills, guardian of the heirs of L. A. Mills, Jr., appealed.

No counsel for the plaintiff.

*Messrs. J. B Batchelor, John Devereux, M. H. Justin* and *J. A. Forney,* for the defendant.

SHEPHERD, J.: The contention of J. W. Harris, as administrator of his wife, is based entirely upon the proposition that the " upper place " was converted into personal property, either by the terms of the will or by the oral contract to sell the same during the life of his intestate.

For the first position he relies upon the doctrine of equitable conversion, insisting that such conversion occurred at the death of the testator. The authorities cited by him fully establish the proposition that where land is directed to be sold and the proceeds divided, the land, at the death of the testator, is impressed with the character of personalty, and the law governing the devolution of that species of property will prevail. This constructive conversion, however, cannot take place unless there is imposed upon the trustee an *imperative duty* to sell, arising either by express command, or necessary implication, " for unless the equitable *ought* exists, there is no room for the operation of the

MILLS *v.* HARRIS.

maxim, that 'equity regards that as done which ought to be done.'" * * * If the act of converting (that is the act itself of selling the land, or laying out money in land) is left to the option, discretion, or choice, of the trustees, or other parties, then no equitable conversion will take place, because no *duty* to make the change rests upon them. 3 Pom. Eq. Jur., 1160; Adams' Eq., 136.

It is too plain for argument that the language used in this will left the sale entirely to the option and discretion of the executors. The words, "if they see fit to do so" (to sell) can admit of no other construction, and there is nothing in the context to qualify their plain signification.

No estate was conveyed, and the land descended to the son and daughter as heirs at law. In this character they were entitled to hold it until they saw fit to sell it for division. In other words, the will conferred only a mere power to sell, and we think that, until that power was exercised, the land remained in its original condition. Schouler Exrs., 217; *Walters* v. *Maunde,* 19 Ves. 424; *Dominick* v. *Michael,* 4 Sandf. S. C., 374; *Bleight* v. *Bank,* 10 Pa. St., 132; *Pratt* v. *Talaiferro,* 3 Leigh, 419; *Montgomery* v. *Millikin,* 1 Sm. & M., ch. 495, and *Greenway* v. *Greenway,* 2 DeG. F. & J., 128.

It is insisted, however, that the oral contract to sell, and a reception of a part of the purchase money by the said son and daughter, was an *actual* conversion of the land. We cannot think so. In order to work such important results, "the contract must be valid and binding, free from all inequitable imperfections, and such as a Court of Equity will specifically enforce against an unwilling purchaser." Pomeroy Eq. Jur., 1101; Williams' Exrs., 2 vol, 1081.

Even if the purchaser, who has entered, and paid a part of the purchase money, on the faith of the oral contract, were complaining, it is well settled in this State that equity would not decree a specific performance, and especially would this be true as against a *feme covert.* Much less will

it interfere in behalf of a party who invokes one of its rules in contravention, we think, of the real intention of the testator. At best, the oral contract to sell, and the reception of a part of the purchase money, was but a partial conversion, the act not being complete, as we have seen, until there was a conveyance, or a valid contract to convey.

Nor will the Court, for the purpose of working a conversion, give a retrospective effect to the conveyance of the executrix. Ever since the case of *Ackroyd* v. *Smithson*, 1 Broc. C. C., 503, in which Mr. Scott (afterwards Lord Eldon) made his celebrated argument, it has been held that constructive conversion only takes place *for the purposes of the will*, and that where these cannot take effect, the property is considered as remaining in its former condition. It is founded upon the *real* intention of the testator, and while some of the artificial rules which have been adopted for the purpose of ascertaining this intention, may sometimes fail in accomplishing their object, the Courts have certainly never gone *beyond* them to defeat the manifest purpose of the will. Such would be the case if we were to hold that the deed in question related to the date of the oral contract of sale.

It is further insisted that the conduct of the son and daughter amounted to an "election" to treat the land as money, and for this position Adams' Eq., 136, and *Craig* v. *Leslie*, 3 Wheat, 463, are cited. As we have seen that a parol contract to sell could not have that effect, we are at a loss to understand how these authorities can help the administrator. They relate to the doctrine of *reconversion*, which, briefly stated, is the right of a person who has the beneficial interest to choose, or "elect," whether he will take the property in its converted condition or in its original form. This principle, it is clear, can have no application to a case like this, where there has been no constructive conversion, for you cannot reconvert that which has never been converted. Even if the principle applied in this case, it would

work in the wrong direction for the administrator, as he is insisting that, by the will, the land was converted into personalty, whereas a reconversion would impress upon it its original character, and thus defeat his claim.

Our conclusion, therefore, is that there was no conversion until the execution of the deed by the surviving executrix, *after* the death of the said son and daughter, and this being so, it follows that the representatives of Mrs. Harris must take the property as found at her death, and, this being land, her heirs will take in preference to her administrator.

The cases of *Smith* v. *Craig*, 3 Ired. Eq., 204, and *Brothers* v. *Cartwright*, 2 Jones' Eq., 116, cited by counsel, are distinguishable from ours. In both there was a positive direction to sell, and the decision of the latter case turned, in a great measure, upon the special limitations contained in the will.

For the foregoing reasons, we think the judgment should be reversed.