RICHARD HOLDEN v. J. K. PUREFOY et al.

*Abandonment — Contract — Specific Performance — Equity — Waiver — Estoppel — Vacating Judgment — Excusable Negligence — Evidence.*

1. Long delay, accompanied by acts inconsistent with a purpose to perform the contract, will, if not waived, bar the right to a specific performance.

2. A contract required by the statute of frauds to be in writing may be waived in parol by abandonment, but the acts constituting such abandonment must be positive, unequivocal and inconsistent with the contract. The rule is founded upon the doctrine of estoppel, and not upon the idea that an estate can be passed by such waiver or abandonment.

3. Not only will the Courts refuse to decree a specific performance when such waiver is established. but the circumstances may be of such character that they will operate as an absolute discharge of the contract, even as between the original parties, and take away any remedy either at law or in equity.

4. Where, upon an appeal from an order setting aside a judgment for excusable neglect there were no findings of fact in the record, and it did not appear that the appellant had requested that such findings should be made, the Supreme Court will assume that the exception is based upon the ground that, taking as true that view of the testimony most favorable to the appellee, he would not be, as a matter of law, entitled to have the motion allowed.

5. In the progress of a cause an order was entered, upon motion of defendant, to make another person party defendant, and a summons was issued and served upon such person in accordance with the order. The person so served did not, however, read, or hear read, the summons, and was unaware of the order making him party, but supposed he was summoned as a witness, in which capacity he attended the trial and was examined. He learned then that he had been made a party, and judgment had been rendered against him for want of an answer: *Held,* that the Judge committed no error in setting aside the judgment upon the ground of excusable neglect.

This was a CIVIL ACTION, tried at January Term, 1890, of FRANKLIN Superior Court, *Boykin, J.,* presiding.

The only matter in controversy was between the defendant J R. Purefoy and M. Woodlief    All the matters in said action in which the plaintiff's testator, Richard Holden, had any interest were tried and determined by the judgment of the Court, rendered before the death of the said Richard Holden, who was the original plaintiff, and who was the testator of the present plaintiff.

On the 1st day of April, 1880, Richard Holden sued out a summons against the defendant Purefoy, returnable to April Term, 1880, of the Superior Court for said county. At Fall Term, 1881, the plaintiff filed his complaint, in which he demanded judgment for the amount of one of the notes referred to in the opinion. Subsequently, the defendant Purefoy filed an answer, setting up the contract to convey the land, and praying a specific performance. He further alleged that the defendant Woodlief had purchased a portion of the land and was in possession.

On motion of defendant Purefoy, it was ordered by the Court that summons issue in the action to M. Woodlief and other parties mentioned in the order. The summons was issued on the 20th of March, 1882, and was served on Woodlief on 1st April, 1882, and was duly returned at the next term of the Court, which began on the 9th May, 1882. At April Term, 1888, there was a decree entered for defendant Purefoy for specific performance and account by plaintiff. At next term Woodlief moved to vacate it as to him, and filed the following affidavit:

"M. Woodlief, the above-named defendant, being duly sworn, says: That the above-named action was commenced by the said plaintiff against the said defendant J. K. Purefoy, by the issuing of a summons on the 30th day of March, 1880, and returnable to Spring Term, 1880 of this Court; that after the return term of said action, as this affiant is now informed and believes, this affiant M. Woodlief was made a party to said action, and a summons was issued to

to the defendant on the 20th of March, 1882; that the Sheriff of Franklin county saw this affiant and said to him that he (said Sheriff) had a summons for this affiant to be at the next term of the Superior Court of this county, something concerning the Richard Holden and Purefoy matter; that he did not know what it was; that the summons was not read to this affiant and he did not know the contents thereof, and was not then or at any other time informed that he was made a defendant in said action until he was examined as a witness before the referee and his attention was then called to the entry of his name in the paper; that in obedience to the notice given or service of summons served on him, hence, as above said, he did not attend the next term of the Court for three days, and saw plaintiff Holden and asked him if he had had the affiant summoned and for what purpose? that said Holden told the affiant that he had not had the affiant summoned and knew nothing about it; he thought he had been summoned as a witness to attend for three days, and not having heard his name called left for home and did not again attend; that the defendant Purefoy was not at Court at the said term and therefore this affiant made no enquiry of him; that this affiant did not know and had no belief that he was a party to said action, or that he had any interest therein and did not, therefore, employ any attorney to represent him, and, so far as he knows, no attorney has assumed to act for and represent him in said action; that he is informed and believes and so, therefore, avers that no complaint has been filed against him by the plaintiff in said action, and that in plaintiff's complaint made therein no averment or charge of fact is made by plaintiff against the defendant and there is no prayer for judgment against him, and there is no prayer for judgment in plaintiff's said complaint against this affiant; that at Spring Term, 1885, of this Court the defendant Purefoy filed his answer, in which he

alleged that the affiant had purchased and was in the possession of part of the land mentioned."

The judgment was vacated as to Woodlief, and the defendant Purefoy appealed.

The other facts necessary to an understanding of the matters presented for review are stated in the opinion.

No counsel for plaintiff.
*Messrs. C. M. Cooke* and *T. M. Pittman*, for Purefoy.
*Messrs. J. B. Batchelor* and *John Devereux, Jr.*, for Woodlief.

SHEPHERD, J.: Before proceeding to a consideration of the merits of this controversy, we must first pass upon the ruling of the Court in setting aside the judgment against the defendant Woodlief.

1. At April Term, 1888, the case was tried upon the pleadings and report of the referee, and there being no answer on the part of the said Woodlief, a judgment was rendered which precluded him from the important defences which he was afterwards permitted to assert. The said defendant, within a year after the rendition of the judgment, moved that the same be set aside, on the ground of surprise and excusable neglect (*The Code*, § 274), and, after a consideration of the affidavits, the Court allowed the motion, and the defendant Purefoy excepted.

No findings of fact accompany the several affidavits, nor does it appear that the appellant requested that such findings should be made. If he had desired the ruling of this Court upon any particular view of the facts, he should have asked for a finding of the same; but, as he failed to do so, we must assume, in the absence of any specific exception, or of a motion to remand, that his objection is based upon the ground that, taking as true that view of the testimony most favorable to the appellee, the latter, as a matter of law, would not be entitled to relief. While this point of practice has

never been determined with reference to motions under the above section of *The Code*, we think that the rule as indicated is just, as well as convenient, and we can see no reason why it should not be adopted in such cases, as well as in motions to vacate attachments and other like proceedings. *Millhiser* v. *Balsley*, 106 N. C., 433.

Taking, then, the affidavit of Woodlief, in connection with the undisputed facts disclosed by the record, we are of the opinion, without any further discussion, that enough appears to sustain the ruling of the Court in setting aside the judgment.

2. It has long been settled that a parol waiver of a written contract, within the statute of frauds, "amounting to a complete abandonment and clearly proved, will bar a specific performance." *Price* v. *Draper*, 17 Ves., 356; *Inge* v. *Lippingwill*, 2 Dick, 469; *Jordan* v. *Lawkins*, 1 Ves. Jr., 404; *Rich* v. *Jackson*, 4 Bro. C. C., 519; *Filmer* v. *Gott*, 6 Ves., 337; *Coles* v. *Trecothick*, 9 Ves., 250; *Robinson* v. *Page*, 3 Russ., 119. But "it is clear that the acts and conduct constituting such abandonment must be positive, unequivocal and inconsistent with the contract." *Faw* v. *Whittington*, 72 N. C., 321; *Miller* v. *Pierce*, 104 N. C., 389; *Falls* v. *Carpenter*, 1 D. & B. Eq., 237. When, however, a contract for the sale of land has been partly performed by the entry of the vendee and a part payment of the purchase-money, the vendee is deemed to have acquired an equitable estate; and while, as was said by BYNUM, J., in *Faw* v. *Whittington*, there is a distinction between contracts to "sell and convey" land (the words of the statute) and contracts or agreements made between vendor and vendee after that relation is established, and which are intended to terminate that relation, the Courts are peculiarly strict in requiring the clearest and most cogent proof, giving effect to such a discharge or abandonment by matter *in pais*, not upon the idea of passing an estate in lands, but by way of "equitable estoppel in the vendee to assert a claim

to specific performance, where his conduct has misled the vendor intentionally." *Faw* v. *Whittington, supra.*

It seems also established that the circumstances may be of such an extraordinary character as not only to constitute a bar to specific performance, but to work in effect such a discharge of the contract, even as between the original parties, as to take away all remedy at law, as well as all claim to the ordinary equitable adjustment between the parties. It is, however, unnecessary in this case to pass upon the latter question, as Holden, the vendor, by bringing this suit against Purefoy, the vendee, for the recovery of the balance of the purchase-money, has, so far as he is concerned, waived any right to insist upon a discharge by way of abandonment, and the vendee is now entitled, as against the said Holden, to insist upon any rights he may have growing out of the said contract, whether they be legal or equitable. These rights may hereafter be determined in this action, but as the case upon appeal is confined, as expressly stated, to the controversy between the defendants Purefoy and Woodlief, we can only consider the question presented, to-wit, Whether Purefoy is entitled to specific performance or any other equitable relief as against Woodlief?

While we do not concur in the ruling of his Honor as to Woodlief being protected by seven years' adverse possession under color of title [the Sheriff's deed not having been delivered, and the two years' possession of the vendor after entry and before sale to Woodlief not being adverse (*Edwards* v. *University*, 1 D. & B. Eq., 325), and therefore not to be computed in making out the requisite time], still enough, in our opinion, appears upon the issues found, the facts admitted and the testimony of Purefoy himself, to sustain the judgment of the Court. The facts are substantially as follows: Holden, the owner, contracted in 1868 to sell the land to Purefoy, and the latter executed to him four notes of $200 each, payable respectively on the 26th February, 1869; 26th

February, 1870; 26th February, 1871, and 26th February, 1872. Purefoy entered under this contract (which was registered) and cut wood and railroad ties, it is said, of considerable value. He paid about one half of the purchase-money, and being in default in the payment of one of the notes was sued in 1871 by Holden. In that year a judgment was rendered against him on said note, and in June, 1872, an execution was issued, under which the land was sold and purchased by Holden. A deed to Holden was prepared by the Sheriff, but for some reason was never delivered. Immediately after this attempted sale in 1872, Purefoy left the land and moved to a distant part of the State, and Holden re-entered and remained in possession until he sold for a valuable consideration, and without actual notice, to Woodlief and others, in 1875 and 1876. Woodlief bought the interests of these other purchasers, and has been in possession ever since, having cleared the land and made other valuable improvements. During all of these years no claim whatever was made by Purefoy, and he candidly testifies that when he left the land he " did not intend to have anything more to do with it." Thus for a period of about twelve years, until the filing of Purefoy's answer in 1885, has this defendant and those under whom he claims, been in possession of the land without actual notice, and without any attempt whatever being made to enforce the contract. It is but fair to assume that if Holden had not brought this suit for the balance of the purchase money, Woodlief would never been disturbed by Purefoy; and can it be that any act of recognition of the contract by Holden, subsequent to his sale of the land, can affect the rights of one who purchased from him? Eliminating from the case, then, the act of Holden in bringing this suit, let us see whether, even as against him, the defendant Purefoy would have been entitled to specific performance.

Without attempting to repeat the numerous authorities upon the general subject, it is sufficient to state, what has

been so often declared, that specific performance is not a matter of strict right, but is, within the discretion of the Court, to be exercised under certain well established principles of equity; and one of these principles is that long delay, accompanied by acts inconsistent with a purpose of performing a contract, will, if not waived by the vendor, preclude the vendee from specific performance. *Falls* v. *Carpenter*, *supra*; *Francis* v. *Love*, 3 Jones Eq., 321; *Love* v. *Welch*, 97 N. C., 200.

The following from 2 Story's Eq. Jur., § 771, is quoted with approval by this Court in *Love* v. *Welch, supra*, and is of peculiar application to the present case: "In general, (says the eminent author) it may be stated that to entitle a party to a specific performance, he must show that he has been in no default in not having performed the agreement, and that he has taken all proper steps towards the performance on his part. If he has been guilty of gross *laches*, or if he applies for relief after a long lapse of time *unexplained by equitable circumstances*, his bill will be dismissed."

"A party cannot call upon a Court of Equity for specific performance," said Lord Alvanly, "unless he has shown himself ready, desirous, prompt and eager;" or to use the language of Lord Cranworth, "Specific performance is relief which this Court will not give unless in cases where the parties seeking it come as promptly as the nature of the case will permit." Fry on Spec. Perf., 320. "A Court of equity will not interfere to decree a specific performance where the party seeking it has been guilty of gross *laches* or long voluntary delay, and in the meantime there has been a material change of circumstances." *McNeil* v. *Magee*, 5 Mason, 244. Now if we apply these principles to the facts before us, it is too plain for argument that specific performance should not be decreed. Granting that time is not generally, in equity, the essence of a contract, and that where there has been only delay, there must be some demand or

some act amounting to notice to the vendee that the default
in the payment will be insisted upon, we have here the very
strongest evidence of this in the action of Holden in suing
for the purchase-money, his attempted sale under execution,
and the resumption by him of the possession and dealing
with the land as his own.   But there is more here than mere
delay: for Purefoy, having control of the land, actually
leaves the same with the purpose of having nothing more to
do with it.   We have, then, not simple delay only, but a
most significant *act* as well as an *admitted intention* of aban-
doning the property.

In the case of *Francis* v. *Love, supra*, the Court refused
specific performance upon the mere delay of payment for
six years.   The Court say: "From 1848 to the filing of the
bill is six years, during which the plaintiff makes no effort
to enforce his rights; on the contrary he leaves the State
and does not return until 1854, just before the bill is filed.
The defendant was well justified in believing that the
plaintiff had abandoned his contract, and that he was at
liberty to proceed in improving the land.   It would be doing
injustice to the defendant, after such delay on the part of the
plaintiff, and after he had dealt with the land as if dis-
charged from his contract, to permit the plaintiff to come
forward and insist upon a specific performance."

So far from explaining his inconsistent acts and long delay
by " equitable circumstances," as required by Story, *supra*,
Purefoy explicitly informs us, as we have stated, that when
he left the land he did not intend to have anything more to
do with it, and his long acquiescence in the possession of
Woodlief, and those under whom he claims, is not only con-
sistent with, but in entire corroboration of, this purpose.
If it be true that Woodlief purchased with constructive
notice, still if the contract could not have been specifically
enforced against a resisting vendor, it is difficult to under-

stand how it can be enforced against one who honestly purchased of him.

It now remains to be determined whether the land in the hands of Woodlief can be impressed with any charge growing out of an equitable adjustment by way of a return of the purchase-money, as upon rescission. Conceding that the registration of the contract, before the act of 1885, was constructive notice, and that Woodlief would have been affected with notice of any facts, which he might have learned upon proper inquiry (and this is the proper rule in such cases, *Bryan* v. *Hodges*, 107 N. C., 492), let us inquire what information he had or could have acquired at the time of his purchase. He finds Holden, the legal owner, in undisturbed possession of the land for two or three years after the attempted sale by the Sheriff and the departure of Purefoy. He finds Holden exercising acts of ownership, and selling parts of the property to various parties, and thus asserting, by the most unequivocal acts, that the contract was abandoned. He would have learned that Purefoy, after controling the land for three or four years, had left the same, and had made no claim to it since his departure for another part of the State. Here is an actual abandonment of occupancy by the vendee and the re-entry and assertion of unconditional ownership by the vendor. If Woodlief had pursued his inquiries further and sought Purefoy, he would have been told, if the latter's own statement is to be believed, that although he, Purefoy, had agreed to purchase the land, he had left it in 1873, had nothing to do with it since, "and did not intend to have anything more to do with it." This is the information he would have obtained, and if, upon this statement of Purefoy, he had purchased and paid for the land, it cannot, we think, for a moment be doubted that Purefoy would have been estopped from asserting any claim against the said purchaser. We think that we are well warranted in thus assuming that at the time of Woodlief's purchase there had

been no change of purpose on the part of Purefoy, as his conduct for years afterwards clearly corroborates his declared intention of abandonment, and he has offered no testimony whatever to the contrary. The case, however, is stronger than this: for, after his purchase, Woodlief entered, cleared the land and made valuable improvements. Purefoy is presumed to have known of this, and, being aware of the occupancy of Woodlief, he makes no objection; and now, after this long period of silence and default, he is awakened from his twelve years' slumber by the wrongful suit of Holden, and, instead of simply defending himself against the same, he treats it as a recognition of the contract, and thus between the two—Holden, endeavoring to enforce a demand founded upon a transaction which he, with the long acquiescence of Purefoy, had most unequivocally treated as abandoned, and Purefoy, asserting a defence based entirely upon such improper demand—this innocent purchaser for value, who has been misled by the conduct of the said parties, is sought to be crushed and destroyed. It is very plain that neither Holden or Purefoy could have enforced the contract as against each other. This being so, it would be grossly inequitable to permit them to revive it to the prejudice of a meritorious purchaser. " A parol waiver or rescission executed by the parties, or followed by change of circumstances rendering it inequitable to enforce the contract, is consequently a sufficient answer to a bill for specific performance. *Lauer* v. *Lee,* 6 Wright, 165; *Bowzer* v. *Kramer,* 6 P. F. Smith, 132. Especially if third persons have given value in the well founded belief that the contract was at an end. *Boice* v. *McCuller,* 3 W. & S., 429; *Workman* v. *Guthrie,* 5 Carey, 495; *Holt* v. *Rogers,* 8 Peters, 420." Under the circumstances of this case (among which we emphasize the resumption of possession, the long delay and acquiescence of the vendee, as well as his admitted intentions), we think it would be grossly inequitable to charge the land in the hands of Woodlief

with any claim whatsoever.   This conclusion is further sup-
ported by the fact that it nowhere appears that Holden is
insolvent and unable to meet any demand which the vendee
might have asserted against him, as upon a rescission of the
contract.   Upon a careful perusal of the entire record, we
think that the judgment of the Court should be affirmed.

Affirmed.