### GEORGE M. SCOTT v. MABEL M. JORDAN.

(Filed 19 March, 1952.)

**1. Pleadings § 14—**

A complaint and reply are inconsistent within the meaning of G.S. 1-141 when they are contrary so that one is necessarily false if the other is true, and the rule against inconsistency does not preclude plaintiff from replying to a defense by alleging new matter involving a new position which is not necessarily inconsistent with that taken in the complaint, since plaintiff should not anticipate a defense in his complaint.

**2. Vendor and Purchaser § 11: Frauds, Statute of, § 10—**

A mutual oral agreement to abandon or cancel an executory contract to convey realty is a defense to any rights asserted by the other party under the contract, since the statute of frauds, while applying to the contract, does not apply to its abondonment or cancellation. G.S. 22-2.

**3. Pleadings § 14—**

Plaintiff sought to recover the land in question as the sole heir at law of his ancestor. Defendant set up in her answer an executory contract to sell executed by the ancestor. Plaintiff's reply set up abandonment and cancellation of the contract by mutual agreement of plaintiff and defendant. *Held:* The reply is not inconsistent with the complaint and states a defense to the new matter set up in the answer, and motion to strike the reply was properly denied.

**4. Executors and Administrators § 8; Descent and Distribution § 1: Conversion § 3—**

Where the owner of land executes an executory contract to convey, his heirs take the land subject to the equities of the purchaser and the rights of the administrator and distributees under the doctrine of equitable conversion, and the administrator is entitled to the balance of the purchase price; but where the money is not necessary to pay debts of the estate, a sole heir at law who is also sole distributee has the absolute right as against the administrator to elect to reconvert and take the property in its original state.

**5. Executors and Administrators § 11—**

In an action by the purchaser for specific performance of an executory contract to convey realty, instituted against the administrator of the vendor, G.S. 28-98, an heir claiming abandonment and cancellation of the executory contract should be allowed to intervene and set up his claim, since judgment against the administrator would not be binding on the heir if he were not a party to the action. Constitution of North Carolina, Art. I, sec. 17.

**6. Parties § 7: Constitutional Law § 21—**

A person claiming an interest in the subject matter of an action and whose rights would be purportedly adjudicated by a judgment therein should be allowed to intervene, since the judgment cannot affect his rights unless he comes in or is brought before the court in some way sanctioned by law. Constitution of North Carolina, Art. I, sec. 17.

**7. Appeal and Error § 14: Ejectment § 14—**

An appeal from order of the court refusing defendant's motion to strike plaintiff's reply in an action to recover possession of realty does not preclude a Superior Court judge from thereafter granting plaintiff's motion for an increase in the defense bond. G.S. 1-111, G.S. 1-294.

FIRST APPEAL by defendant from *Nettles, Resident Judge,* at Chambers in Asheville, North Carolina, on 1 December, 1951; and second appeal by defendant from *Bennett, Special Judge,* at the December Term, 1951, of the Superior Court of BUNCOMBE County.

Civil action to recover a parcel of realty in Buncombe County known as No. 6 Buckingham Court.

These are the essential facts in chronological order:

1. The plaintiff, George M. Scott, brought this action against the defendant, Mabel M. Jordan, for the recovery of No. 6 Buckingham Court. His complaint makes out this case:

The plaintiff, who is the "sole child and heir at law" of W. L. Scott, has title in fee to the land with a present right to its possession. He acquired his title by inheritance from his ancestor, W. L. Scott, who let the defendant into possession as his tenant at will on 11 June, 1949, and who died intestate shortly thereafter, to wit, on 15 August, 1949. The plaintiff terminated any right of the defendant to remain in the occupation of the premises by a reasonable demand for possession before the commencement of the action, but the defendant ignored such reasonable notice to quit and now wrongfully withholds the possession of the premises from the plaintiff.

2. The defendant furnished a defense bond in the amount of $200.00 conditioned as provided in G.S. 1-111 to secure the plaintiff against costs and loss of rents and profits pending the action, and filed an answer denying the material allegations of the complaint other than those averring the former ownership of the land by W. L. Scott and the death of W. L. Scott. The answer also pleaded the following new matter:

On 11 June, 1949, W. L. Scott, acting through his duly authorized agent, Edward E. Dunn, and the defendant entered into a contract in writing whereby W. L. Scott bound himself to convey No. 6 Buckingham Court to the defendant for $7,800.00, and whereby the defendant obligated herself to pay that sum to W. L. Scott in three several installments of $250.00, $750.00, and $6,800.00. The contract has been duly proved

and registered in Buncombe County, where the land is situated. The defendant entered on the premises during the life of W. L. Scott in conformity with a stipulation of the contract, and has rightfully occupied the same ever since in her capacity as vendee. The defendant duly paid the first two installments of the consideration for the land to W. L. Scott, who died before the third installment of $6,800.00 matured. After W. L. Scott's death, the defendant tendered the unpaid part of the consideration to Edward E. Dunn, the administrator of W. L. Scott, and made demand upon him for a deed executed by him in his capacity as administrator of the vendor under G.S. 28-98 conveying No. 6 Buckingham Court to her. The administrator, acting at the instance of the plaintiff, refused to accept the tender or to make the deed. The defendant has kept her tender good, and is still able, ready, and willing to make payment of the unpaid portion of the consideration in exchange for the deed. Prior to the commencement of this action, the defendant Mabel M. Jordan, as plaintiff, sued "Edward E. Dunn, agent for W. L. Scott, and Edward E. Dunn, Administrator of W. L. Scott," for specific performance by the administrator of the contract of 11 June, 1949. Before commencing this action, the plaintiff, George M. Scott, applied to Buncombe Superior Court for leave to intervene in the suit between Mabel M. Jordan and the administrator, but his application was denied. That suit is still pending.

3. The plaintiff filed a reply, which does not allege ultimate facts with the directness and positiveness desirable in pleading. Nevertheless when the reply is construed with liberality in the plaintiff's favor, it does allege by implication rather than by express averment that subsequent to the death of W. L. Scott the alleged contract of 11 June, 1949, was abandoned and canceled by an oral agreement made by plaintiff and defendant acting through Edward E. Dunn as mediator.

5. The defendant forthwith filed a motion to strike the above allegations from the reply. When the motion to strike was heard by him at Chambers on 1 December, 1951, Judge Nettles entered an order denying it, and the defendant took her first appeal to the Supreme Court, assigning the refusal to strike as error.

6. Subsequently, to wit, on 13 December, 1951, the plaintiff moved before Judge Bennett, the presiding judge at the December Term, 1951, of the Superior Court of Buncombe County, for an order requiring an increase in the defense bond. Judge Bennett entered an order requiring the defendant to give defense bonds totaling $800.00 conditioned as provided in G.S. 1-111 to secure the plaintiff against costs and loss of rents and profits pending the action, and the defendant took her second appeal to the Supreme Court, assigning the order requiring the increased bond as error.

*Williams & Williams for plaintiff, appellee.*
*J. W. Haynes and George A. Shuford for defendant, appellant.*

Ervin, J.  The code of civil procedure prescribes that where the answer contains new matter constituting a counterclaim, the plaintiff may plead in his reply "any new matter not inconsistent with the complaint, constituting a defense to the new matter in the answer."  G.S. 1-141.

The defendant contends on her first appeal that Judge Nettles ought to have stricken the reply for want of conformity to this provision of the code.  She asserts initially that the reply departs from the plaintiff's case as made in his complaint and introduces new matter inconsistent with it; and she insists secondarily that the new matter set up in the reply does not constitute a defense to the counterclaim stated in the answer.

It thus appears that the first appeal necessitates an examination of the pleadings.

The complaint states a good cause of action for the recovery of the parcel of realty known as No. 6 Buckingham Court.  It alleges, in substance, that the plaintiff has title in fee to this land with the present right to its possession; that the plaintiff acquired his title by inheritance from the former owner, W. L. Scott; and that the defendant wrongfully withholds the possession of the land from the plaintiff.

The answer denies the material averments of the complaint, and avers as new matter and counterclaim that the defendant has equitable title to the land in question with a present right to its possession as the vendee in an executory contract in writing duly executed by the former owner, W. L. Scott, during his lifetime, to wit, on 11 June, 1949.

The reply pleads that subsequent to the death of W. L. Scott the alleged executory contract of 11 June, 1949, was abandoned and canceled by an oral agreement made by plaintiff and defendant acting through Edward E. Dunn as mediator.

A complaint and a reply are inconsistent within the meaning of the code when they are contrary the one to the other, so that the one is necessarily false if the other is true.  *Colahan v. Herl,* 168 Kan. 130, 210 P. 2d 1003; *O'Malley v. Luzerne County,* 3 Kulp (Pa.) 41.  When the complaint and the reply under scrutiny are laid alongside this test, they are seen to be free of the vice of inconsistency.  The reply in which the plaintiff alleges that the executory contract supporting the defendant's claim to No. 6 Buckingham Court has been abrogated by the mutual agreement of the parties is in complete harmony with the complaint in which the plaintiff asserts that he is the absolute owner of that property.  Indeed, the plaintiff's pleadings conform to the general procedural principle that a plaintiff's initial pleading need not, and should not, by its averments, anticipate a counterclaim or a defense, and undertake to negative or avoid it.  71 C.J.S., Pleading, section 84.

This brings us to the inquiry whether the new matter set up in the reply constitutes a defense to the new matter stated in the answer.

The new matter in the answer bases the defendant's claim to the realty in controversy upon the executory contract allegedly made by the plaintiff's ancestor and the defendant. Manifestly the reply states a defense to this claim if it alleges that this executory contract has been abandoned and canceled in a lawful mode by parties having legal power to take such action. *May v. Getty,* 140 N.C. 310, 53 S.E. 75; 58 C.J., Specific Performance, section 14. See, also, in this connection: 66 C.J., Vendor and Purchaser, section 1561.

According to the answer, the executory contract was executed by W. L. Scott, acting through his agent, Edward E. Dunn, in strict conformity with the provision of the statute of frauds that a contract "to sell or convey any lands . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some person by him thereto lawfully authorized." G.S. 22-2.

The statute of frauds applies to the making of enforceable contracts to sell or convey land, not to their abrogation. As a consequence, an executory written contract to sell or convey real property may be abandoned or canceled by mutual agreement orally expressed. *Bell v. Brown,* 227 N.C. 319, 42 S.E. 2d 92; *May v. Getty, supra; Holden v. Purefoy,* 108 N.C. 163, 12 S.E. 848; *Houston v. Sledge,* 101 N.C. 640, 8 S.E. 145, 2 L.R.A. 487.

It necessarily follows that the reply states a defense to the new matter in the answer if the plaintiff and the defendant had legal power to do what they are alleged to have done.

When an owner of land contracts to sell and convey it and dies intestate without doing so, his heirs take the property subject to (1) the equities of the purchaser under the contract, and (2) the rights of the administrator and the distributees of the owner under the doctrine of equitable conversion. *Mizell v. Lumber Co.,* 174 N.C. 68, 93 S.E. 436; *Mills v. Harris,* 104 N.C. 626, 10 S.E. 704; *Grubb v. Lookabill,* 100 N.C. 271, 6 S.E. 390; *Osborne v. McMillan,* 50 N.C. 109; *Hodges v. Hodges,* 22 N.C. 72; *Earle v. McDowell,* 12 N.C. 16; 18 C.J.S., Conversion, section 40; 26 C.J.S., Descent and Distribution, section 125; 33 C.J.S., Executors and Administrators, section 104; 58 C.J.S., Specific Performance, section 452.

For this reason, we digress here to observe that the plaintiff ought to have been made a party to the action based on the Act of 1797, now G.S. 28-98, in which the defendant sues the administrator of the plaintiff's ancestor for specific performance of the executory contract of 11 June, 1949. The basic issues in the two suits are identical. Manifestly the

defendant cannot prevail in either case if the executory contract has been abandoned or canceled by parties having legal power to take such action. 58 C.J., Specific Performance, section 165; 66 C.J., Vendor and Purchaser, section 1561. As the result of the order of some judge not identified by the present record denying the motion of the plaintiff for leave to intervene in the defendant's action against the administrator, we now have two lawsuits where one would suffice. Moreover, each of the two suits bears a remarkable resemblance to "the play-bill which is said to have announced the tragedy of Hamlet, the character of the Prince of Denmark being left out."

When all is said, the order barring the plaintiff from intervention in the defendant's action against the administrator merely doubles litigation for litigation's sake. Under Article I, Section 17, of the North Carolina Constitution, a judgment cannot bind a person unless he comes or is brought before the court in some way sanctioned by law and afforded an opportunity to be heard in defense of his rights. *Eason v. Spence,* 232 N.C. 579, 61 S.E. 2d 717; *Thomas v. Reavis,* 196 N.C. 254, 145 S.E. 226. As an inexorable consequence of this constitutional provision, any judgment which may be rendered in the defendant's action against the administrator will be wholly ineffectual as against the plaintiff, who is not a party to such action, even though such action is predicated upon the Act of 1797, now G.S. 28-98. This basic principle of the organic law was impliedly recognized and applied in *McCraw v. Gwin,* 42 N.C. 55, where the heirs were permitted to assail a deed made by the administrator of their ancestor under the power vested in him by the statute. As that great jurist *Chief Justice Ruffin* said more than a century ago: "It is not the meaning of the statute that the executor should be obliged, or have power, to convey, where the deceased or his heir or devisee would not be bound to do so." *Hodges v. Hodges, supra.*

If the court should deny the plaintiff the right to plead the abandonment or cancellation of the executory contract in the instant action after having barred him from participation in the defendant's suit against the administrator, he could justly complain not only of the law's delay, but also of the slings and arrows of a fortune which would be unconstitutional as well as outrageous.

Our digression has not been altogether amiss if it has any tendency to induce judges or lawyers to ponder the implications of Article I, Section 17, of the State Constitution when they consider who should be made parties to litigation. We now return to the inquiry whether the plaintiff and the defendant had legal power to abandon or cancel the executory contract.

According to the complaint, the plaintiff is the sole distributee and heir of the deceased owner. Since they were both *sui juris* at the time named

in the reply, the plaintiff, as the only heir and distributee of the deceased owner, and the defendant, as the sole purchaser, had undoubted legal authority to abandon or cancel the executory contract, unless they were precluded from doing so by rights devolving upon the administrator of the deceased owner under the doctrine of equitable conversion.

We might reasonably come to a decision upon the present record favorable to plaintiff on this aspect of the litigation either on the theory that it inferentially appears that the administrator has released or waived any rights accruing to him under the doctrine of equitable conversion, or on the theory that the defendant is not privileged to invoke any rights devolving upon the administrator under that doctrine to invalidate an agreement abandoning or canceling the executory contract made between him and the plaintiff. We are not compelled, however, to rest our decision on either of these grounds.

Conversion is the fictional change of realty into personalty or of personalty into realty for equitable purposes. 18 C.J.S., Conversion, Section 1; *Seagle v. Harris,* 214 N.C. 339, 199 S.E. 271; *Woodward v. Ball,* 188 N.C. 505, 125 S.E. 10; *McIver v. McKinney,* 184 N.C. 393, 114 S.E. 399. When the doctrine of conversion is applied to the present record, it is plain that the administrator has no rights entitling him or anyone else to question the capacity of the plaintiff and the defendant to abandon or cancel the executory contract. An administrator does not take charge of the assets of his intestate merely for the sake of handling them. He takes charge of such assets for this twofold purpose: (1) To pay the debts of the intestate; and (2) to make distribution of the intestate's property to the rightful beneficiaries of the estate. The executory contract between the deceased owner and the defendant worked an equitable conversion, entitling the administrator of the deceased owner to claim the unpaid portion of the sale price as personalty for the purposes of administration. *Mills v. Harris, supra;* 18 C.J.S., Conversion, sections 9, 40. It does not appear that the intestate left any debts, and it does appear that the plaintiff is the sole distributee of his estate. These things being true, the plaintiff, as the sole beneficiary of the estate of the deceased owner, had an absolute right as against the administrator to elect to reconvert the property and to take it in its original state. *Trust Co. v. Allen,* 232 N.C. 274, 60 S.E. 2d 117; *Seagle v. Harris, supra; Clifton v. Owens,* 170 N.C. 607, 87 S.E. 502; *Phifer v. Giles,* 159 N.C. 142, 74 S.E. 919; *Duckworth v. Jordan,* 138 N.C. 520, 51 S.E. 109. Under the allegations of the reply, the plaintiff made a positive election to reconvert the property and to take it in its original state when he made his agreement with the defendant to abandon or cancel the executory contract. Such election put an end to any rights devolving upon the administrator under the doctrine of equitable conversion.

For the reasons given, Judge Nettles rightly refused to strike the reply.

The defendant asserts that her appeal from the order of Judge Nettles denying her motion to strike "carried the entire case to the Supreme Court," and that by reason thereof Judge Bennett had no jurisdiction to make the order requiring the defendant to give an increased defense bond conditioned as provided in G.S. 1-111 to secure the plaintiff against costs and loss of rents and profits pending the final determination of the action.

This contention is untenable. It is in direct conflict with the controlling statute, which prescribes in express terms that "when an appeal is perfected . . . it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from." G.S. 1-294. See, also, in this connection: McIntosh on North Carolina Practice and Procedure in Civil Cases, section 693. Inasmuch as the complaint stated a cause of action for the recovery of real property, the question of the sufficiency of the defense bond required by G.S. 1-111 "was a matter included in the action," which was not affected in a legal sense by the motion of the defendant to strike the reply.

The order of Judge Nettles denying the motion to strike and the order of Judge Bennett requiring the increased defense bond must be affirmed.

This action ought to be consolidated with the defendant's suit against the administrator for the purpose of trial and judgment. The presiding judge in the Superior Court will undoubtedly take such step either on motion of the parties or *ex mero motu.*

Affirmed.