STATE EX REL. MATHEWS ET AL., APPELLANTS, *v.* EDDY, RESPONDENT.

JUDGMENT—*Foreign attachment—Justices' Courts.*—There being no provision within title 18 of the Code of Civil Procedure, relating to proceedings in Justices' Courts, which defines the character of a judgment to be entered against a defendant where jurisdiction has been obtained by publication of summons and attachment of property, a personal judgment in such case without directions for the sale of the attached property is valid, notwithstanding that section 80 of the Code of Civil Procedure requires that the judgment and execution in District Courts in such cases shall be against the property attached, and that section 804 of the Code of Civil Procedure requires that the provisions of the Code of Civil Procedure relative to practice, pleading, and trial in the District Court, shall, so far as the same are applicable, and do not conflict with this title, be observed in the Justices' Courts, as said section 80, is in conflict with subdivision 3 of section 245, providing that in actions where the service of the summons was by publication the court may render judgment for the amount which the plaintiff is entitled to recover.

SAME— *Executions—Foreign attachments—Justice's Court.*—In the case at bar the execution was in form as provided by sections 802 and 803 of the Code of Civil Procedure, relating to executions from Justices' Courts. Sections 194 and 319 of the Code of Civil Procedure provide, in substance, that if judgment be recovered by the plaintiff, the sheriff shall satisfy the same out of the property attached, and that all property and rights of property seized and held under attachment in the action are liable to execution. *Held*, that the taking of the personal judgment, without embodying therein directions for the sale of the attached property, did not destroy the lien of the attachment, and the execution was valid.

MANDAMUS— *Justice of the peace— Refusal to exercise jurisdiction.*—Mandamus will lie to compel a justice of the peace to issue an order to compel a garnishee to appear and testify under oath, where it appears that the justice has refused to make the order, and that the judgment and execution against the defendant are lawful.

*Appeal from Second Judicial District, Silver Bow County.*

Judgment was rendered by McHATTON, J., against relator on application for a writ of mandate.

*Charles O'Donnell*, for Appellants.

Plaintiff in support of his position cited the following authorities: *Pennoyer* v. *Neff*, 95 U. S 714, and cases cited; *Mudge* v. *Steinhart*, 78 Cal. 34; 12 Am. St. Rep. 17, and cases cited; *Cooper* v. *Reynolds*, 10 Wall. 319; *Walker* v. *McCusker*, 65 Cal. 360; *Belcher* v. *Chambers*, 53 Cal. 635; *Hart* v. *Sansom*, 110 U. S. 151; *Freeman* v. *Alderson*, 119 U. S. 188; *Anderson* v. *Goff*, 72 Cal. 69; 1 Am. St. Rep. 34; *Hamilton* v. *Tutt*, 65 Cal. 57; *Anderson* v. *Pennie*, 32 Cal. 266; *People* v. *De La Guerra*, 43 Cal. 225.

*F. T. McBride*, for Respondent.

A judge being called upon to decide as to the validity of any proceedings, and having acted, and rendered his judgment accordingly, such action cannot be controlled by a writ of mandamus. (*Ex parte Newman*, 14 Wall. 152; *Ex parte Schwab*, 98 U. S. 240; *Ex parte Railway Co.* 101 U. S. 720; *State ex rel. Bebee* v. *Judge*, 28 La. An. 1705; 26 Am. Rep. 115.) It is a well-established principle that in an action on a money demand, in which there has been no personal service or personal appearance, the case is essentially in the nature of a proceeding *in*

*rem,* the only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to plaintiff, and in such case the judgment of the court, though in the form of a personal judgment, has no effect beyond the property attached in the suit, and no general execution can issue for any balance unpaid after the attached property is exhausted. The court in such case cannot proceed at all unless the officer finds property of the defendant on which to levy the writ of attachment. (*Pennoyer* v. *Neff,* 95 U. S. 714; *Cooper* v. *Reynolds,* 10 Wall. 319; *Freeman* v. *Alderson,* 119 U. S. 188; Drake on Attachments, § 5, p. 5, n. 3; Freeman on Judgments, §§ 127, 607 *a.*)

Our legislature has adopted this general principle and has gone one step further, and has provided that in such case the judgment shall not be a general or personal judgment, but shall be against the attached property. (Comp. Stats. first div. p. 79, § 80.) In the case at bar, the judgment rendered was a general personal judgment and the execution issued was a general execution, and upon proceedings supplemental to the said execution the relators are endeavoring to collect from Shippen an alleged indebtedness to the judgment debtor Borlace, which from their own showing was not in existence until long after the said judgment was rendered. All presumptions are adverse to the jurisdiction of inferior courts. (Wells on Jurisdiction, § 40, p. 29; Freeman on Judgments, §§ 525–527.) The said judgment of *Mathews et al.* v. *Borlace* is void, for the reason that it does not appear that there was any sufficient affidavit for publication of summons made, or order for publication of summons, or any sufficient publication of summons, the summons published requiring defendant to appear before Hopkins and not before Eddy. An order in proceedings supplemental to execution may be regarded as a special order, made after final judgment and appealable. (Hayne on New Trial and Appeal, § 196, p. 586.) An appeal will lie from an order refusing to quash an execution. (*Gilman* v. *County of Contra Costa,* 8 Cal. 52.) If, then, Judge Eddy erred in deciding that relators' execution was void, and dismissing the proceedings supplemental thereto, relators had a plain, speedy, and adequate remedy at law.

BLAKE, C. J. — This is an appeal from the judgment of the court below in refusing to issue a peremptory writ of mandate upon the application of the appellants. The affidavit of the parties who are beneficially interested contains the following statements, which are relevant and material to this inquiry:—

That said John Eddy is a lawful justice of the peace of the township of Silver Bow, county of Silver Bow, and State of Montana. That said William H. Mathews and C. F. Curtis were doing business in Walkerville, county of Silver Bow aforesaid, under the firm name of Mathews and Curtis, and commenced an action September 12, 1889, against Sarah Borlace in the Justice's Court of said township to recover the sum of $299, for goods sold and delivered to her by said Mathews and Curtis. That said Borlace left the Territory of Montana September 12, 1889. That on said twelfth day of September, 1889, said Mathews and Curtis filed their complaint and affidavit for and bond on attachment in said action in said Justice's Court, and caused a summons to be issued thereon. That a summons and writ of attachment were then issued in said action and placed in the hands of O. B. Benson, a constable of said county; and that said summons was returned by said constable with his return, showing that by diligent search he was unable to find said Borlace; and that said writ of attachment was returned by said constable, showing that he levied upon and attached, September 12, 1889, the following described property, to wit, money due said Borlace from Ben Clark, $27; D. Cunningham, $42; Frank Sands, $15; Al. Abbot, $160; and that said parties acknowledged such indebtedness, and promised to pay said moneys into court. That said Curtis, as one of said plaintiffs, filed, September 20, 1889, his affidavit with said Justice's Court, and obtained an order that service of said summons be made by publication in the Butte Mining Journal; that said summons was then issued and published in said newspaper for the period of thirty consecutive days, to wit, from the twenty-second day of September, 1889, to the twenty-second day of October, 1889. That the foregoing proceedings were had in said court when J. J. Hopkins was a justice thereof; and that said John Eddy succeeded, December 10, 1889, the said Hopkins. That the said Eddy, as the justice of said court, signed

and entered, December 12, 1889, a judgment in favor of said
Mathews and Curtis and against said Borlace for the sum of
$299. That an execution was issued August 11, 1890, by the
said Eddy, as such justice, and placed in the hands of the
sheriff of said county; that said sheriff, by his deputy, one
Richards, and said Abbot went into the office of W. C. Shippen,
who was acting as the agent for said Borlace, and said Abbot
placed the sum of $155, the amount he claimed he owed the
said Borlace, and the money which was garnished in his hands,
upon the table of said Shippen; and that while said money
was on said table the said Richards, as said deputy-sheriff,
served said Shippen with a copy of the execution issued by said
Eddy, and also a garnishee notice. That the said Shippen
made, August 15, 1890, a return to the said sheriff, showing
that he held in his hands as the property of said Borlace the
sum of $29.90, and that he paid, August 14, 1890, to F. T.
McBride the sum of $100, and retained for himself the sum of
$25. That Charles O'Donnell, as the attorney of said Mathews
and Curtis, made, August 20, 1890, the affidavit required by
section 803 of the Code of Civil Procedure, and obtained an
order from said Eddy, as said justice of said court, commanding
the said Shippen to appear before him at his office on said day
at seven o'clock, P. M., and be examined on oath concerning
any money that he may have in his possession, or under his
control, and as to any debts, money, effects, credits, and other
property owing to or belonging to said Borlace; and that said
order was then served upon said Shippen. That said Shippen
appeared at said time and place in pursuance of said order
before said Eddy, as said justice, and was sworn according to
law in such cases; that said Shippen was there with his coun-
sel, F. T. McBride; that the said examination of said Shippen
was postponed by said justice until August 21, 1890, at nine,
A. M.; that it was then postponed until August 22, 1890, at ten,
A. M.; that said Shippen appeared at said time before said Eddy,
as said justice, and objected to any examination by the counsel
for said Mathews and Curtis; that said counsel, Charles O'Don-
nell, demanded of said Eddy, as such justice, the privilege of
examining the said Shippen, which was then refused; that said
Mathews and Curtis, by said counsel, requested said court to

make an order placing said Shippen in the custody of the sheriff aforesaid, for refusing to testify in this proceeding, and that said Eddy, as such justice, refused to grant said order, or compel said Shippen to testify; and that the hearing was then continued until August 22, 1890, at seven, P. M. That said Shippen, in pursuance of said order, appeared before said Eddy, as such justice; that counsel for said Mathews and Curtis then asked said Shippen several questions, which the said Shippen refused to answer; and that said Eddy, as such justice, refused to allow said counsel to put any questions to said Shippen, but ordered said Shippen to be discharged from further attendance at said court, and dismissed the said proceedings. And that this action of said Eddy, as such justice, has deprived said Mathews and Curtis of said sum of $155, or any part thereof, in the hands of said Shippen; and that they have no plain, speedy, or adequate remedy in the ordinary course of law.

The prayer is for an alternative writ of mandate commanding said Eddy, as such justice, to issue an order to compel said Shippen to appear and testify on oath according to said section 803 of the Code of Civil Procedure. Thereupon the court below issued an alternative writ of mandate in conformity with the application of said Mathews and Curtis.

The answer of the said Eddy "denies on information and belief that on March 12, 1889, or at any other time, the said petitioners filed any complaint in the case of *Mathews and Curtis* v. *Sarah Borlace* in the said J. J. Hopkins' court, or any paper that from courtesy could be called either a complaint or account; denies that the said bond or affidavit on attachment was filed in said cause or court prior to September 12, 1889." The answer then admits that said Benson, as said constable, made the following return upon the writ of attachment in said case of *Mathews and Curtis* v. *Borlace:*—

"I do hereby certify that I received this writ on the twelfth day of September, A. D. 1889, and personally served the same by, on the twelfth day of September, A. D. 1889, levying upon and attaching the following described property, to wit, money due defendant, Sarah Borlace, from Ben Clark, $27 ; D. Cunningham, $42; Frank Sands, $15; A. C. Abbot, $160; said parties acknowledging said indebtedness and promising to pay

the same into court; all done in the county of Silver Bow, M. T.

"Dated this fourteenth day of September, A. D. 1889.

"O. B. BENSON, Constable."

The answer admits that an affidavit for the publication of the summons in said case was filed September 20, 1889; and admits that he, the said Eddy, as such justice of the peace, signed the judgment in said case, which is made a part of said answer. "And this defendant, as justice of the peace aforesaid, is of the opinion and has so decided that said judgment was not duly or regularly entered, for the reason that there never was any personal service of summons on defendant, Sarah Borlace, and she never voluntarily appeared in said case; and the statutes provide that when there is no personal service on defendant within the State, and no voluntary appearance on her part, the judgment and execution shall be against the property attached, and therefore denies that said judgment was duly entered against the said defendant, Sarah Borlace, for the said sum of $299."

The answer admits that an execution was issued August 11, 1890, in said case, and alleges: "And this defendant is of the opinion, and as justice of the peace has decided, that said execution was not duly or regularly issued, the judgment upon which it issued not being in accordance with law." The answer further alleges: "As to the said W. C. Shippen being duly garnished under said execution, this defendant is of the opinion, and as said justice of the peace has decided, that he was not, for the reasons that neither the said execution nor judgment upon which it issued was in accordance with law." These averments respecting the validity of the judgment and execution are reiterated, and it is also stated in the answer that said Shippen "had never been served with garnishee process under the attachment, and no indebtedness or other property had ever been levied upon it in his hands under the attachment issued in this case."

The papers, which were filed in the Justice's Court in the case of *Mathews and Curtis* v. *Borlace*, appear in the transcript. The court below heard and tried the application for the peremptory writ of mandate upon the affidavit, answer, and papers. No opinion was delivered upon the entry of the judgment, but

we infer from the argument of counsel that the reasons which have been given in the foregoing answer controlled the decision.

It will be necessary to examine the proceedings in the Justice's Court in the foregoing case of *Mathews et al.* v. *Borlace.* No personal service was had upon the defendant therein; but the affidavit for the publication of the summons was made according to the terms of the statute, the summons was duly published and the proof thereof was made, and the property of said Borlace was attached by the constable. The respondent, as a justice of the peace, was authorized to enter a judgment in favor of said Mathews *et al.* and against the defendant. (*Cooper* v. *Reynolds,* 10 Wall. 308; *Pennoyer* v. *Neff,* 95 U. S. 714; *St. Clair* v. *Cox,* 106 U. S. 350; *Pana* v. *Bowler,* 107 U. S. 529; *Heidritter* v. *Elizabeth Oilcloth Co.* 112 U. S. 294; *Applegate* v. *Lexington etc. Min. Co.* 117 U. S. 255; *Freeman* v. *Alderson,* 119 U. S. 185.) In *Cooper* v. *Reynolds, supra,* Mr. Justice Miller in the opinion said: "So also while the general rule in regard to jurisdiction *in rem* requires the actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court. . . . . So the writ of garnishment or attachment, or other form of service, on a party holding a fund which becomes the subject of the litigation, brings that fund under the jurisdiction of the court, though the money may remain in the actual custody of one not an officer of the court."

The answer alleges that the action of this justice in entering this judgment was void, and his counsel insists that the provisions of the Code of Civil Procedure prescribing the form thereof were disregarded. The following language is relied on to uphold this view: "And in all cases where there has been property of the defendant attached to secure any judgment that may be recovered against him, and there is no personal service on such defendant within the Territory, or voluntary appearance, as aforesaid, the judgment and execution shall be against the property attached, as provided in section 73 of this chapter." (Code Civ. Proc. § 80.) The section thus referred to is silent upon the subject, and there are other provisions regulating

judgments which must be compared to assist us in this investigation. The transcript shows that there has been entered in the docket of the Justice's Court all the proceedings required by law in the case of said *Mathews et al.* v. *Borlace.* The title specifies correctly the court and the names of the parties, and it is stated that "judgment was entered against the defendant and in favor of plaintiffs for the sum of $299, costs of this action, constable fees, $8.90." The property which was attached comprised debts which were due from various parties to said Borlace, and amounted to $244.

The requirements of the Code of Civil Procedure relating to proceedings in the Justice's Court have been scrupulously observed. Under this title there is no section which defines or distinguishes the character of the judgment which shall be entered when jurisdiction of the defendant has been obtained by the publication of the summons and the attachment of property. In other words, there is no clause which is similar to the eightieth section, *supra.* It provides for the publication of a summons in certain cases, which embrace the action of *Mathews et al.* v. *Borlace.* (Code Civ. Proc. § 745.) "When the defendant fails to appear and answer, judgment shall be given for the plaintiff, as follows: When a copy of the account, note, bill, or other obligation upon which the action is brought was filed with the justice at the time the summons was issued, judgment shall be given without further evidence for the sum specified in the summons." (Code Civ. Proc. § 792.) It is further provided: "Every justice shall keep a book denominated a docket, in which he shall enter: . . . . *Ninth.* The judgment of the court, specifying the costs included, and the time when rendered." (Code Civ. Proc. § 805.) "The several particulars of the last section specified shall be entered under the title to the action to which they relate, and at the time when they occur. Such entries in a justice's docket . . . . shall be primary evidence to prove the facts so stated therein." (Code Civ. Proc. § 806.)

It is further enacted that "The provisions of this act, in relation to parties to actions in the District Courts, and relative to practice, pleading, and trial, shall, so far as the same are applicable, and do not conflict with this title, be observed in the

Justices' Courts." (Code Civ. Proc. § 804.) Therefore, the contention of the respondent is that the eightieth section, *supra,* should have been followed in the entry of the judgment by the justice of the peace. We think that this construction of the statute is erroneous, and that the legislature, which treats with great liberality the pleadings and practice of the tribunals of this inferior jurisdiction, would not, in such an indirect mode, adopt a stringent rule concerning the formalities of a judgment and execution. But conceding that the position of the respondent is sound, we find that the eightieth section, *supra,* is in conflict with the chapter which regulates "judgment upon failure to answer," and provides: "In actions where the service of the summons was by publication, the plaintiff, upon the expiration of the time designated in the order of publication, may, upon proof of the publication, and that no answer has been filed, apply for judgment; and the court shall thereupon require proof to be made of the demand mentioned in the complaint . . . . and may render judgment for the amount which he is entitled to recover." (Code Civ. Proc. § 245, par. 3.) These sentences are contained in the first division of the Compiled Statutes of Montana, which were approved at the same time, March 1, 1887. The history of this legislation should be reviewed. The part of the eightieth section which has been cited was added to the seventy-eighth section of the Code of Civil Procedure by an act approved February 23, 1881. (Stats. 12th Sess. 9.) The seventy-third section was then amended by adding the following: "And in all cases when the action is for the collection or enforcement of a moneyed claim, obligation, or demand against the persons upon whom such service is sought to be had, it shall also be made to appear by said affidavit, or other satisfactory evidence, that some property or effects of the defendant, or in which he has an interest, has been attached in pursuance of the statute in such case provided, describing the property or effects so attached, which shall be set forth in the order of the court or judge directing the publication of the summons, and recited in the summons published in pursuance of such order." (Stats. 12th Sess. 9.) By an act "concerning the publication of summons," approved March 1, 1883, it is expressly provided that said seventy-third section, "and all acts

and parts of acts in conflict herewith, are hereby repealed."
(Stats. 13th Sess. 51.) Thus the portion of said seventy-third
section which is mentioned in the eightieth section, *supra,* was
repealed about eight years ago, and has not been re-enacted.
The expression above quoted, "as provided in section 73 of
this chapter," is meaningless, and the reason for its insertion
therein has long since ceased. It must be confessed that the
intention of the law-givers could have been declared in terms
which would have removed every doubt regarding the forms of
judgments which may be entered in the District Courts. It is
a serious question as to whether said eightieth section, *supra,* is
valid, but it is needless to give an opinion thereon. In view
of these considerations we have concluded that there is no stat-
ute which requires justices of the peace to enter any other judg-
ment than that which is recited in the record.

The same principles are applicable to the execution which
was issued to collect the judgment entered against Borlace.
The title affecting the Justice's Court prescribes the contents
of an execution and the duties of the officers to whom it may
be delivered. (Code Civ. Proc. §§ 802, 803.) The execution,
which is exhibited in the transcript, does not describe the prop-
erty which was attached by the constable, but is framed ac-
cording to the provisions of this title. The authorities which
discuss these matters are harmonious. In *Anderson* v. *Goff,* 72
Cal. 65; 1 Am. St. Rep. 34, the court said: "Our statute gives
the right to service of summons upon defendants in all cases
where they are non-residents of the State, without reference to
the fact of their having or not having property here. The
effect of a judgment thus obtained is quite another thing. . . . .
The judgment, when rendered, does not differ from that entered
in other cases upon a money demand."

The court commented upon the statutes of that State, but we
will give in lieu thereof excerpts from our Code of Civil Pro-
cedure, which are in substance the same: "If judgment be
recovered by the plaintiff, the sheriff shall satisfy the same out
of the property attached by him, which has not been deliv-
ered to the defendant, or claimant. . . . ." (Code Civ. Proc.
§ 194.) "All goods, moneys, chattels, and other property,
both real and personal, or any interest therein of the judgment

debtor not exempt by law, and all property and rights of property, seized and held under attachment in the action, are liable to execution." (Code Civ. Proc. § 319.) The court then proceeded: "Under these provisions it has been held by this court that no order of sale by the court is necessary to authorize the sheriff to sell the attached property, and that the lien of the attachment is not lost by taking a simple money judgment, without embodying therein directions for the sale of the attached property. . . . . Had our courts adopted the practice, in cases where attachments are issued, of declaring the lien of the attachment in the judgment, and directing the attached property to be sold in satisfaction of such lien, the orderly connection between the lien and the rights accruing to a purchaser under a sale thereunder would be more readily apparent; but in the light of the interpretation given to the statutes, and to the judgment in such cases, the same result is reached. In view of this result, we think it must follow that while a personal judgment against a non-resident debtor who is only served with process by publication is void and of no effect, yet in a case where the debtor has property within the State, which is seized under a writ of attachment issued in the cause at the time the suit is brought, a judgment therein, which, though general in its terms, has the effect of perpetuating the attachment lien, and of subjecting the attached property to the payment of a debt due from the non-resident, is so far in the nature of a proceeding *in rem* as to uphold a sale of the attached property, and considered for that purpose, and to that extent, is not void. It is the method, and only method, pursued in our courts for subjecting the property of a non-resident debtor to the payment of demands due from him to our citizens, and the object sought is the essential thing to be considered, and is of more importance than the means by which the end is attained." The case of *Low* v. *Henry*, 9 Cal. 538, which was decided in 1858, is approved, and the court therein said: "We come now to consider the question as to whether the liens of the attachments were lost, in consequence of the form in which the judgments were taken. The counsel of plaintiffs insist that the liens were lost 'by the fact that simple money judgments were entered up, without any directions for the sale of the attached property.'

. . . . There is no prayer in the complaint that the court should order a sale of the attached property. The lien of the attachment arises after the commencement of the suit. The Code contains express directions to the sheriff as to property attached. . . . . . There is nothing in the Code that requires any order of court to authorize a sale. For these reasons we think the objection not well taken." In *Cooper* v. *Reynolds, supra,* the court further said: "But if there is no appearance of the defendant, and no service of process on him, the case becomes, in its essential nature, a proceeding *in rem,* the only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to the plaintiff. . That such is the nature of this proceeding in this latter class of cases is clearly evinced by two well-established propositions: first, the judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted." The application of the authorities to the facts contained in the record leads to one determination. The judgment of the Justice's Court, and the execution issued thereon, were lawful, and the answer of the respondent which sets forth their invalidity cannot be supported.

Another important question which has been discussed in the briefs cannot be determined upon this hearing. It appears from the record and admissions of counsel that said Abbot, when served with the writ of attachment by the constable, was indebted to Borlace on account of the purchase of real property in the sum of $155; that said Shippen, as the agent of Borlace, held the deed therefor in escrow and would not deliver it until he received the consideration; that for this reason the said money was placed by Abbot upon a table in the office of Shippen; that the sheriff, by virtue of the execution, levied upon the money, which Abbot claimed to be due from him to Borlace, and also served the same upon Shippen; and that the said deed was then received by Abbot. We have no jurisdiction in this proceeding to inquire into the respective liabilities of Abbot or Shippen to Mathews *et al.* under these circumstances. The debt which was owing from Abbot to Borlace has been regularly

attached, and Mathews *et al.* are entitled to the fruits of their judgment. The respondent maintains that this security has been lost or impaired, and this contention may be correct, but we cannot adjudicate the issue without evidence offered upon a legal trial. The foundation for a statutory investigation has been laid, and it is necessary that Shippen and other witnesses should be required to testify in said Justice's Court concerning this indebtedness from Abbot to Borlace. Our inquiry is limited to a narrow scope, and we determine that the respondent should have proceeded with the examination of Shippen upon this subject.

The respondent contends that the judicial discretion of the Justice's Court cannot be controlled by the writ of mandate; but this is not the ground upon which the appellants stand. The authorities are numerous in holding that the appropriate remedy was applied for in the court below. (*Harrington* v. *Holler*, 111 U. S. 796; *Ex parte Morgan*, 114 U. S. 174; *Ex parte Brown*, 116 U. S. 401; *Ex parte Parker*, 120 U. S. 737; *Ex parte Parker*, 131 U. S. 221; *People* v. *De La Guerra*, 43 Cal. 225.) In *Ex parte Parker*, 131 U. S. 221, the court said: "The writ of mandamus lies, as held in *Ex parte Parker*, 120 U. S. 737, where an inferior court refuses to take jurisdiction when by law it ought to do so, or where, having obtained jurisdiction, it refuses to proceed in its exercise."

It is therefore ordered and adjudged that the judgment be reversed with costs, and that the court below issue a peremptory writ of mandate according to the prayer of the affidavit and application.

HARWOOD, J., and DE WITT, J., concur.