## MAY v. GETTY.

(Filed December 15, 1905).

*Contracts— Rescission and Abandonment— Question for Court — Evidence — Specific Performance — Vendor and Vendee—Findings of Fact — Executions — Attachment— Non-residents—Judgments—Collateral Attack.*

1. Parties to a written contract may by parol rescind or by matter *in pais* abandon the same.

2. What will amount to an abandonment of a contract is a question of law and the acts and conduct which are relied on to constitute the abandonment should be clearly proved, and they must be positive, unequivocal and inconsistent with the existence of a contract, but when thus established they will bar the right to specific performance.

3. Where it appears that the vendee, in a contract for the sale of property at $2,350.00 had never paid any money, other than $100, paid on the date of the contract and never demanded a deed and two years after the execution of the contract, left the State and has never since exercised any ownership or had possession of the property, and that he told the vendor twelve or thirteen years ago that he did not think he could pay for it and if he could make his money out of the property, to go ahead and do so, and that he left the property with the intention of relinquishing all rights, *held,* these facts are sufficient to show a rescission and abandonment of the contract.

4. Where there was evidence to sustain the findings of fact as to the rescission and abandonment of a contract, the findings will not be reviewed by this court.

5. Under section 370 of The Code, the sheriff, upon receiving an execution, is directed to sell the property previously attached by him and is invested with as much power and authority to act in the premises as if an execution, in the form of a *venditioni exponas,* had been issued to him, specially commanding him to sell the particular property.

6.  A plaintiff cannot take a general and personal judgment against a defendant, who is a non-resident, upon a service by publication and not even when an attachment has been levied on his property, the court having jurisdiction to adjudge against him only to the extent of the property seized.

7.  The interest of a vendee in a contract for the purchase of property who has paid a part of the purchase money, is not the subject of sale under execution.

8.  The judgment in another suit is conclusive as to the validity of the cause of action in a collateral proceeding, except for want of jurisdiction.

9.  In an action for the specific performance of a contract to convey, if the plaintiff can give a perfect title at the time of the trial, it is sufficient to induce a court of equity to compel performance of the contract.

ACTION by S. J. May and wife against R. P. Getty and others, heard by *Judge T. J. Shaw* and a jury, at the Spring Term, 1905, of the Superior Court of MACON, on exceptions to the report of a referee.

This action was brought to compel specific performance of a contract to convey land, made November 23, 1896, between the plaintiffs, S. J. May and wife, and the defendant, R. P. Getty. The defendants resist the enforcement of the plaintiffs' equity upon the ground that they are not the owners of the title they contracted to convey. It appears that on June 22, 1889, the plaintiffs, by an instrument, having in some respects the form of a deed, covenanted for the consideration of $2,350 to convey to H. V. Maxwell "all their right, title and interest in and to the mineral interests in certain land in Macon County, on Partridge Creek, known as the 'Forrester Gold Mine,' and consisting of three several tracts." This is the land in controversy. They further agree in said instrument "to make to H. V. Maxwell or his assigns, a good and sufficient deed with warranty," to all their mineral interests in the said tracts of land. On November 23, 1896, the plain-

tiffs contracted to convey with covenant of warranty to the defendant R. P. Getty, for the consideration of $6,000, the land above described. The plaintiffs allege that the purchase money so agreed to be paid has not been paid in full, and they demand judgment for the balance due, $4,400, and for a sale of the land. The defendants aver that, at the date of said contract, and at the date of the contract with Maxwell, the plaintiffs did not have a good title to the land, as H. V. Maxwell and J. M. Forrester had interests in the fifty acre tract—Maxwell an interest in the sixty-one acre tract and Forrester the entire interest in the ten and one-half acre tract, and that the title was further incumbered and complicated by the outstanding contract of the plaintiffs with Maxwell for the sale of their interest to him, which contract has already been set forth. It further appears that Forrester duly contracted to sell his interests to the plaintiff, S. J. May, for $1,070. Sundry payments were made by the defendant Getty on the purchase money due by him upon his contract with S. J. May, leaving a balance due of $4,889.76, and also by the plaintiff, S. J. May, on the purchase money due by him upon his contract with Forrester, leaving a balance due of $1,313.25. H. V. Maxwell, on March 5, 1896, for the consideration of $1 transferred all his right, title and interest in the land, to H. P. Wyman, by an instrument in the form of a deed, but not having any seal, and Wyman conveyed all the right, title and interest thus acquired, to the defendant R. D. Woodward, by deed dated January 17, 1900, for the consideration of $150.

On August 25, 1893, the plaintiff S. J. May, brought suit against Maxwell for the sum of $2,360, balance due on the contract for the sale of the mining property above mentioned, and caused an attachment to be issued and publication to be made. Maxwell being then a non-resident, the said attachment was levied on the property described in the contract between May and Maxwell, and also on the other real estate belonging to Maxwell, including all interest he had in the property in

controversy, outside of that mentioned in the said contract. The plaintiff May recovered judgment, which recites the issuing of the attachment and the levy of it on the said lands and interests by the sheriff "as appears by his return." A general execution issued upon this judgment in which there was no reference to the attachment. After referring to the judgment roll, it required the sheriff, if sufficient personal property could not be found, to satisfy the said judgment out of any real property of the defendant in his county "in whose hands soever the same may be." The description of the property, in the return of the sheriff upon the execution, corresponds with that found in ·his return upon the warrant of attachment. At the sheriff's sale, August 6, 1894, the property was purchased by the plaintiff, Sarah J. May, and a deed was made to her by the sheriff, August 13, 1894.

The referee found as facts that Maxwell never tendered or paid May any money, other than $100 paid on the date of the contract, and never demanded the deed for the land. Two years after the execution of the contract with May, Maxwell left this State and has never since exercised any ownership over this property or had possession of the same. Thereupon, May entered upon the said property and held possession thereof until the date of the Getty contract (either for himself or by authority of his wife). Maxwell has not since been a resident of this State; that S. J. May, acting under authority from his wife, took possession of the property shortly after the execution of the deed from the sheriff to Sarah J. May, and did certain work tending to develop the property and at intervals took ore therefrom, and did other work or repairs when necessary to keep the property in shape until the date of the contract to R. P. Getty, at which time said Getty took possession and spent about $6,000 in developing the mine, improving it, putting up buildings and taking out between 1,500 and 2,000 tons of ore.

In this connection it is well to state that the court found,

as additional facts, that twelve or thirteen years prior to the date of the judgment (Spring Term, 1905), "H. V. Maxwell told S. J. May that the parties who were to furnish him with the money to pay for the property had failed to do so, and that he did not think he could pay him, and if he could make his money out of the property, to go ahead and do so. Maxwell left the State, has never exercised possession over the property since or tendered any payment; that Maxwell left the property with the intention of relinquishing all rights and equities he had by reason of his contract with May, and May assented to it."

The court then held upon this finding that Maxwell abandoned the said contract and relinquished all his rights and equities thereunder at that time. The court also held that the sale and sheriff's deed under the attachment and judgment in the case of *May v. Maxwell* passed to the plaintiff, Sarah J. May, all of the property and interest of Maxwell, which were sold by the sheriff, except such interest or equity as he acquired by virtue of the contract between him and the plaintiff, S. J. May.

The case was referred and the referee reported the facts and his conclusions of law. From his report and the findings of the judge, we have taken the foregoing statement of facts. Numerous exceptions were filed to the report of the referee. The court passed upon the exceptions and finally adjudged that there was due by the defendant Getty upon his contract with the plaintiffs the sum of $4,889.76 and interest, and that the plaintiffs owed Forrester on his contract the sum of $1,313.25 and interest. It was thereupon adjudged that if the defendant Getty failed to pay the sum due by him within the time fixed in the judgment, the commissioners appointed for the purpose should sell the lands described in the contract between the plaintiff, S. J. May, and R. P. Getty, and report the sale to the court at its next term, and a similar direction was given as to the land described in the contract between the

MAY *v.* GETTY.

plaintiff, S. J. May and J. M. Forrester, in case the said plaintiff failed to pay the amount found to be due to Forrester. It was further adjudged that, if the money due by Getty to the plaintiff, S. J. May, and the interest thereon, should be paid by Getty, a deed should be executed by the proper parties to Getty for the lands described in both contracts, and that out of the money so paid the sum of $1,313.25 and interest should be paid into the clerk's office for the use of the heirs of Forrester, he having died; this being required, as we assume, for the exoneration of the Forrester lands from the lien for the balance of the purchase money due under the contract between the plaintiff, S. J. May and Forrester, the said amount being properly chargeable against the plaintiffs in the general settlement and adjustment of the equities, as between the several parties, and this being a short way of relieving the Forrester land of its burden. At any rate, there was no exception to this provision of the judgment, nor was there any to its form in any particular—the defendants excepting to it only upon the ground that the court erred in adjudging any amount to be due by the defendant Getty, and that it should have adjudged that the plaintiffs were indebted to Getty in the sum of $9,330.14 with interest. Defendants appealed.

*Horn & Mann* for the plaintiffs.
*E. B. Norvell* and *Jones & Johnston* for the defendants.

WALKER, J., after stating the case: We agree with the learned counsel of the defendants that the vital questions in this case are those raised by their seventh and eighth exceptions to the referee's conclusions of law and the ruling of the court thereon. Indeed we think that a decision upon the matters thus presented will be sufficient to dispose of the appeal, as the other exceptions are subsidiary to those two, and, if there are any not thus strictly related to them, they are not essential elements in the case and the rulings upon them, even

if incorrect, and we do not think they were, cannot be assigned as reversible error.

There are three questions which we will consider in the following order: 1. Did Maxwell agree with May to rescind, and thereupon abandon the contract of sale? 2. Were the proceedings in the suit of *May v. Maxwell*, through which the *feme* plaintiff, Sarah J. May, claims title to the land of Maxwell, not covered by the said contract, valid and sufficient to vest the title in her? 3. Is there any defect in the title of the plaintiff to the Forrester land of which the defendants can avail themselves?

It is now well settled that parties to a written contract may, by parol, rescind or by matter *in pais* abandon the same. *Faw v. Whittington,* 72 N. C., 321; *Taylor v. Taylor,* 112 N. C., 27; *Holden v. Purefoy,* 108 N. C., 163; *Riley v. Jordan,* 75 N. C., 180; *Gorrell v. Alspaugh,* 120 N. C., 362. In the case first cited, *Bynum, J.,* for the court, says: "The contract is considered to have remained in force until it was rescinded by mutual consent, or until the plaintiffs did some acts inconsistent with the duty imposed upon them by the contract which amounted to an abandonment." *Dula v. Cowles,* 52 N. C., 290; *Francis v. Love,* 56 N. C., 321. What will amount to an abandonment of a contract is of course a question of law and the acts and conduct which are relied on to constitute the abandonment should be clearly proved, and they must be positive, unequivocal, and inconsistent with the existence of a contract, but when thus established they will bar the right to specific performance. *Miller v. Pierce,* 104 N. C., 390; *Faw v. Whittington, supra; Holden v. Purefoy, supra.* We are of the opinion that the facts found by the referee and the court are sufficient to show a rescission of the contract and an abandonment of all rights under it by Maxwell. They are quite as significant for the purpose of indicating the intent of the parties, and especially the purpose of Maxwell to relinquish all his rights, as any we find in the books which have been

held sufficient to defeat a claim for specific performance or the assertion of an equity in the property. *Francis v. Love,* 56 N. C., 321. There was evidence to sustain the findings of fact as to the rescission and abandonment, and this being so, the findings will not be reviewed by us. *Battle v. Mayo,* 102 N. C., 413.

The defendants' next contention is that, as the plaintiffs in the case of *May v. Maxwell* issued a general execution on the judgment instead of first having the land, which had been attached, condemned in the judgment to be sold by the sheriff under a special execution to be issued for that purpose, they lost the lien acquired by the levy of the attachment and all rights thereunder and, as the judgment was a personal one, nothing passed by the sale under the execution issued upon it to the purchaser, Sarah J. May. Counsel, in support of this position, cited *Amyett v. Backhouse,* 7 N. C., 63, and *Powell v. Baugham,* 31 N. C., 153. Those cases decide that the suing out of a writ of *fieri facias* instead of a writ of *venditioni exponas* on a judgment taken in a suit wherein an attachment has been levied, waives the lien of the attachment, there having been no condemnation of the land. By taking out a general execution on the judgment, containing no clause of condemnation, the land previously levied on under the writ of attachment was thrown into the general mass of landed property belonging to the defendant, just as if the plaintiff had taken out an execution against his property generally as is done in ordinary cases. The practice prevailed of issuing a *venditioni exponas* with a *fieri facias* clause, so that the property formerly levied upon under an attachment or *fieri facias* might be sold under the *venditioni exponas* and the special *fieri facias* might be used to reach any other property not subject to the lien of the levy. But the old procedure has given way to the new and now we have no such distinctions between the forms of process as then obtained. The law now looks more to the substance than to form, and ignores the ancient

technicalities which were frequently used to defeat justice. The Code explicitly provides that the sheriff, upon receiving the execution, shall satisfy the judgment out of the property attached by him, and for that purpose he shall proceed to sell so much of the attached property, real or personal, as may be necessary. Code, section 370. This is an express direction to the sheriff to sell the property previously levied on by him under the attachment, and invests him with as much power and authority to act in the premises as if an execution, in the form of a *venditioni exponas,* had been issued to him, specially commanding him to sell the particular property. This has been the uniform construction of our statute upon the subject, as will appear by reference to the adjudged cases. *Electric Co. v. Engineering Co.,* 128 N. C., 199; *Chemical Co. v. Sloan,* 136 N. C., 122. In *Gamble v. Rhyne,* 80 N. C., 183, it is said: "The property seized is a legal deposit in the hands of the sheriff to abide the event of the suit, the lien of the attaching creditor having priority over any subsequent attachment or execution which may come to his hands; and on the rendition of judgment against the defendant and when execution is issued and comes to the sheriff's hands, then his powers as sheriff, under the attachment to hold merely, are merged into the larger powers acquired by him under the execution." It is undoubtedly true that a plaintiff cannot take a general and personal judgment against a defendant, who is a non-resident, upon a service by publication and not even when an attachment has been levied on his property, the court having jurisdiction to adjudge against him only to the extent of the property seized. In the latter case it acquires jurisdiction by actual seizure of the *res,* under its process, and not otherwise. This is familiar learning, and our observations upon it need not be extended. *Cooper v. Reynolds,* 77 U. S. (10 Wall.), 308; *Pennoyer v. Neff,* 95 U. S., 714; *Winfree v. Bagley,* 102 N. C., 515; *Long v. Ins. Co.,* 114 N. C., 465; *Stone v. Myers,* 9 Minn., 303; *State v. Eddy,* 10 Mont., 311.

In the case of *Goodwin v. Claytor,* 137 N. C., 224, we had occasion to discuss both of these questions and it was there in part said: "It is contended that, if the debt was subject to garnishment at all, any lien acquired by the service of the writ of attachment was waived and the garnishee released by taking a general and personal judgment against the defendant and the garnishee, instead of taking an order condemning the debt to the payment of plaintiff's claim. We do not think that, if the plaintiff acquired any lien on the debt due the defendant by the tobacco company, he lost it by taking a judgment against the defendant and the garnishee. The judgment against the defendant is void as a personal judgment, as the court could acquire no jurisdiction to proceed against him, except in so far as it could, by its process, levy upon or seize his property; and in this respect the suit is, to all intents and purposes, in the nature of a proceeding *in rem,* and not one *in personam.* But in this case the defendants can derive no benefit from the fact that the execution issued upon a general judgment. It was necessary to take such a judgment to ascertain the debt, and the execution issued to the sheriff was, by virtue of the special provision of the statute we have mentioned, in the nature of a *venditioni exponas,* to sell the property attached, and, for the purpose of subjecting the latter to the payment of the judgment, the court had plenary jurisdiction." The plaintiff in the case of *May v. Maxwell* could not sell under execution, the property described in the contract with Maxwell, who had paid one hundred dollars on the purchase money, as his interest was not the subject of sale under such process (*Hinsdale v. Thornton,* 75 N. C., 381; *Ledbetter v. Anderson,* 62 N. C., 323; *Love v. Smathers,* 82 N. C., 369); but the sale passed title to the property belonging to Maxwell and not described in the contract, as there was no trust relation subsisting with respect to that. We cannot inquire into the validity of the cause of action in *May v. Maxwell,* the judgment being conclusive as to that in a collateral

proceeding. *Cooper v. Reynolds,* 77 U. S. (10 Wall.), 308.
In the case cited, *Mr. Justice Miller* says that the court can-
not disregard a judgment in another suit, or refuse to give it
effect, on any other ground than a want of jurisdiction in the
court which rendered it, and then proceeds: "It is of no avail,
therefore, to show that there are errors in that record, unless
they be such as prove that the court had no jurisdiction of the
case, or that the judgment rendered was beyond its power.
This principle has often been held by this court, and by all
courts, and it takes rank as an axiom of the law." That case
is precisely in point, as the court was dealing with a question
in all respects like the one we are now considering. If the
cause of action in *May v. Maxwell* was defective, it could be
taken advantage of only by a proper pleading in that cause
and any ruling upon it could be reviewed by exception and
appeal. The judgment, in any view, was merely erroneous
and correctible by appeal and not in a collateral proceeding by
direct attack.

Sarah J. May having already acquired title to the other
property by reason of the rescission and abandonment of the
contract, as we have shown, it therefore follows that as the
proceedings in the attachment suit cannot be successfully
assailed, the plaintiffs can give a good title to all the land
embraced in their contract with the defendant Getty, unless
there is some defect in the title to the Forrester land. It is
not denied that Forrester had a good title to the three several
tracts of land which, on the 16th day of November, 1896, he
contracted to sell to S. J. May, or rather that he owned the
right, title and interest therein which he claimed. This
being so, we do not see why, under the judgment of the court
in this action, the defendants will not be fully protected as to
this part of the land. If they pay the amount found by the
court to be due, as the balance of the purchase money under the
contract of the plaintiffs with the defendant Getty, with inter-
est and costs, so much of that payment will be applied to the

amount due by the plaintiff, S. J. May, on the Forrester contract as will discharge it and relieve the Forrester land of any further lien. And the same result will follow if the mineral interests and other rights and property adjudged to be sold to pay the sum of $4,889.76, due on the plaintiff's contract with the defendant Getty, bring enough to pay that amount with interest and costs. If the property so adjudged to be sold does not bring enough, the rights of the parties can be easily and equitably adjusted by a sale of the Forrester land, upon the principle which the learned judge evidently had in mind when the judgment was rendered, and which is plainly set forth therein, namely, by a sale of the Forrester interest and the application of the proceeds, first, to the payment of the Forrester debt, and then to the payment of any balance due the plaintiffs; or, if the plaintiffs redeem the Forrester interest from the lien, adjudged to rest upon it, by subrogating them to the rights of F. M. Morgan, administrator of Forrester, when they may have that interest sold to reimburse themselves, provided they have not already been paid in full the amount due by the defendant Getty. The latter under this arrangement cannot lose anything unless by his own default.

In the discussion of the case we have treated the instrument executed by S. J. May to H. V. Maxwell, as a contract to convey, as it is such in substance and effect. And of the same nature are the instruments executed by S. J. May to R. P. Getty and by J. M. Forrester to S. J. May.

We have carefully reviewed the whole case and are unable to see why the defendant Getty will not be able to secure a good and indeed a perfect title, if he complies with the terms of the decree by paying the amount adjudged to be due by him. We do not deem it necessary to refer particularly to the other exceptions, as the most of them are practically covered by the decision we have already made, and those that

are not, either refer to matters not reviewable here or are in themselves without merit.

If there ever has been any defect in the title, it does not exist now; and if the plaintiffs can give a perfect title at the time of the trial, it is sufficient to induce a court of equity to compel performance of the contract. *Hughes v. McNider,* 90 N. C., 248.

There was no error in the rulings and judgment of the court below.

No Error.