The plaintiff brought this action to recover damages for the breach of covenants of seizin and warranty and a covenant against incumbrances contained in a deed executed by the defendant to him, and to have the amount of said damages, which were laid at $13,700, declared to be a lien upon sixteen bonds each of the par value of $1,000, which were a part of the purchase-price agreed to be paid for the land conveyed by the said deed and for other property sold to the plaintiff at the same time, the other part of the said consideration being $21,000 in cash and an account. *Page 173 
It appears that the defendant, on 29 December, 1900, contracted to sell to the plaintiff, for the sum of $37,000, eight tracts of land on the French Broad River in the county of Madison and 800 shares of the capital stock of the North Carolina Electrical Power Company, or the subscription to that many shares of the capital stock; each share being of the par value of $100, and W. B. Ellis having already paid on his shares or subscriptions $48,000. A deed for the land was (202) prepared and duly executed by W. B. Ellis and his wife on 20 March, 1900, and acknowledged by them, and the privy examination of the wife taken on 24 March, 1900, before the Clerk of the Superior Court of Forsyth County, and the deed ordered to registration by the Clerk of Madison Superior Court on 5 January, 1901. This deed was afterward registered. After its execution the plaintiff discovered that there was a defect in the title to one of the tracts of land, known as Mountain Island, embracing the southern half of the river and running along its bank for a distance of about 46 poles, at a point about two miles from Hot Springs, and containing about 30 acres. He had paid $21,000 on the purchase-money in cash and an account, but still held the $16,000 in bonds. On 6 February, 1904, he commenced this action by causing a summons to be issued against the defendant to the Sheriff of Forsyth County, who made the following return:
"Received 6 February, 1904. Not executed. The defendant not to be found in my county."
The same day the plaintiff filed his complaint, in which he alleged the execution of the aforementioned deed which is described as dated 20 March, 1900, and registered in the office of the Register of Deeds of Madison County in Book 14, p. 159. He then sets forth the several covenants and the breach thereof as evidenced by the defect in the title to the 30-acre tract, and the existence of certain judgment liens, which had been paid off by him. It is then alleged that the plaintiff has possession of the sixteen bonds and brings them into Court to be subjected by its order to the payment of his claim. He prays judgment for the amount of his alleged damages, $13,500, and for a sale of the bonds to satisfy his lien thereon, which he acquired by reason of the defect in the title to the thirty acres.
The plaintiff on the same day, and presumably at the same time that he filed his complaint, made an affidavit before the (203) Clerk in which he alleged that the defendant was indebted to him in the sum of $13,700 for breach of the warranty contained in the deed from him to the plaintiff dated 20 March, 1900, and registered in Madison County in Book 14, p. 159; that the defendant is a nonresident and has property in this State which should be applied to the satisfaction of the said claim for damages; that plaintiff has possession of *Page 174 
the sixteen bonds, in which the defendant claims certain rights; that plaintiff has a lien on the said bonds for the payment of his claim and that he holds the bonds subject to said liens. He therefore asks for a warrant of attachment, which was issued and levied 9 February, 1904, upon the sixteen bonds in the possession of the plaintiff, as appears from the Sheriff's return, which was made by his deputy. On the day of the levy the plaintiff made an affidavit before the Clerk in which he set out in full the return of the Sheriff on the summons and then alleges that the defendant cannot, after due diligence, be found in this State, and that he is a nonresident; that the plaintiff has a good cause of action against him, "which arose upon a breach of warranty contained in a certain deed from W. B. Ellis to this plaintiff dated . . . . day of. . . ., and duly recorded in the office of the Register of Deeds of the County of Madison, Book . ., folio . ., by which said breach of covenant the defendant is indebted to the plaintiff in the sum of $13,500; that said defendant is a proper party to this action; that he has property in this State and that plaintiff has issued a warrant of attachment in this cause. He then prays for an order of publication, which was granted, and the publication was made on the same day (9 February, 1904), in the following form:
"The defendant above named will take notice that a summons in the above — entitled action was issued against him on the 6th day of (204) February, 1904, and that an action entitled as above has been instituted in the Superior Court of Forsyth County for the purpose of recovering damages for breach of covenants of warranty and of seizin contained in a deed made by said W. B. Ellis to the said plaintiff, dated the ____ day of ___________. The defendant will also take notice that a warrant of attachment was issued by said Court on the 6th day of February, 1904, against the property of said defendant, and on the 9th day of February, 1904, the attachment and notice of garnishment were served on W. A. Lemly, and said warrant of attachment and notice of garnishment are returnable before the said Court on the 14th day of March, 1904. The defendant is hereby required to appear and answer or demur to the complaint at the term of the Superior Court of Forsyth County to be held on the 14th day of March, 1904, or the relief demanded will be granted."
The Court (Judge W. R. Allen presiding) adjudged the publication to be in due form and properly made and that the original process or summons and the warrant of attachment had been duly served upon the defendant.
At March Term, 1904, the defendant, by his attorney, entered a special appearance and moved to dismiss, upon the following grounds: 1. No cause of action is set out in the affidavit for publication. 2. That *Page 175 
an attachment cannot issue in favor of the plaintiff against himself as garnishee. 3. The plaintiff alleges in his complaint that he holds the sixteen bonds subject to his claim against Ellis and that he brings the same into Court to be subjected under its order to the payment of the said claim. 4. That the bonds, at the time of the levy by the deputy sheriff of the attachment issued in this action, had already been levied upon (15 September, 1903) by the Sheriff himself in the action of McCoy v. Ellis, which is still pending, and the bonds were and still are subject to the said prior levy. The motion was denied, and the defendant excepted.
At the same term of the Court the defendant Ellis was duly adjudged insane, and D. H. Blair was appointed his guardian (205)ad litem. In the following August he filed an answer through the same attorney who had entered the special appearance, and in his answer he admits that the plaintiff had agreed to deliver the sixteen bonds to Ellis as a part of the consideration for the deed, the execution of which is admitted, though he denies any knowledge of the nature of its contents. He further denies that the plaintiff has any right to hold the same or that he has any lien thereon, but avers that Ellis is entitled to the possession of the bonds. He admits the nonresidence of Ellis, but denies all the other material allegations of the complaint.
We state the twenty-first exception substantially as it appears in the brief of the defendant's counsel:
The defendant attempted to show that the plaintiff Lemly was acting for himself, the witness C. A. Reynolds, and others, in making the purchase from Ellis, and that Reynolds had such an interest in the transaction and in the result of the action as would exclude his evidence concerning any transaction between Ellis and Lemly under sec. 1631 of the Revisal. Reynolds was a stockholder in the North Carolina Electrical Power Company. Defendant's counsel asked the witness Reynolds the following question: "Is Mr. Lemly under any contract or agreement to convey what was given him in this deed to the Power Company?" Plaintiff objected; the objection was sustained, and the defendant excepted. The witness answered: "Mr. Lemly has entirely conveyed part of it. He has not made us a deed to the land, though we have agreed upon the price, and he has agreed to convey it." The witness also testified that he had no interest in the result of this action. The defendant's counsel insisted that under this admission of the witness, he was incompetent. The Court ruled otherwise, and the defendant excepted.
The thirty-eighth exception is stated in the same manner: It was in evidence that about the time of the sale by Ellis to Lemly, (206) stock in the Power Company had been sold to Carr and others, *Page 176 
and the defendant offered a book, which Reynolds had previously identified as the stock-book of the company, to show that the stock had been sold to these outsiders at par, and to contradict Reynolds' evidence that the stock was not worth more than fifty cents on the dollar. The book was excluded, and defendant excepted.
In order to ascertain the damage that the plaintiff sustained by reason of the defect in the title of the Mountain Island tract of land, it became necessary to show the value of the property sold, the stock and the land and also the value of the Mountain Island tract, and to determine what part of the price was paid for that tract. It appears that at the time the contract between Lemly and Ellis was made (29 December, 1900), the dam of the Power Company had not been completed, the machinery had not been purchased and the plant was only in the process of construction, not being capable at the time of earning anything. In this connection, C. A. Reynolds, a witness for the plaintiff, testified: "At the time Mr. Lemly bought Mr. Ellis's stock, or rather subscription to stock, of the North Carolina Electrical Power Company, it is hard to say what it was worth. There was nothing finished but the plant at Ivy. The dam was only eight feet high. No electrical machinery had been bought; nothing of that sort had yet been obtained, and it is hard to tell what the stock was worth. If you want my opinion, I do not think it was worth fifty cents on the dollar." The other evidence tended to show that after Ellis sold his interest to Lemly, the plant was completed and the company furnished electric power to the city of Asheville, but that it had not paid a dividend, because it had not earned profits sufficient for that purpose.
Upon the issue as to damages the Court charged as follows: (207) "When you come to consider the value of the property, you have to estimate the value of the eight hundred shares of stock in the Electrical Power Company. There was evidence that 60 per cent of the par value of the stock had been paid in, but the real value of the stock depends on the property owned by the corporation, and in a great measure on the success of the enterprise in which the company was engaged. If the enterprise was a success and paid dividends, of course the stock would be worth more than it would be if it was a failure and paid no dividends. If the operation of the corporation proved a disastrous one and lost money, why then, as a matter of course, the stock would be depreciated in proportion as it lost money. The law would be that if the corporation failed and got in debt — if it had to go in debt for the running expenses — as a matter of course, the stockholders would have to make good to the creditors for the unpaid stock (and, therefore, you can take into consideration in valuing that stock the testimony as to the payment of dividends, and as to whether the plant had been a success or not)." *Page 177 
The issues and the answers of the jury thereto are as follows:
1. Did the defendant W. B. Ellis and wife execute the deed mentioned in the complaint? Answer Yes.
2. Did said deed contain the covenants? alleged in the complaint? Answer: Yes.
3. Has there been a breach of said covenants? Answer: Yes.
4. What damage, if any, is the plaintiff entitled to recover of the defendant? Answer: Twelve thousand five hundred dollars, with interest from 29 December, 1901.
5. Were the judgments set out in the complaint liens on the lands conveyed by Ellis to Lemly? Answer: Yes.
6. Have the said judgments been paid off by the plaintiff? Answer: Yes.
7. If, so, how much has the plaintiff paid out in discharging said judgments? Answer: Seventy-eight dollars and ninety (208) cents, which is included in fourth issue.
The Court rendered a personal judgment against the defendant for $12,500 and interest from 29 December, 1901, and costs, and declared the said amount a lien on the sixteen bonds. The Court further adjudged that the bonds be sold by the commissioner named in the judgment and the proceeds applied to the payment of the judgment, and that the residue, if any, be paid to the defendant, who excepted to the judgment generally, and especially for the reason that a personal judgment could not be given against him. Defendant appealed.
The first question raised by the defendant is that the affidavit upon which the order of publication is based is defective, as no cause of action is sufficiently set out therein, and the defendant's counsel, in support of this position, relies on Bacon v. Johnson, 110 N.C. 114, and Mullen v.Canal Co., 114 N.C. 8; Code, sec. 218 (Revisal, sec. 442). The specific grounds of objection are: 1. That there is not a sufficient reference to the deed in which the covenant is to be found. 2. That there is no definite description of the land, having special regard to its locality. 3. That there is no allegation of an eviction under paramount title so as to constitute a good cause of action for a breach of the covenant of warranty.
It seems to us that the reference to the warranty, as contained in a certain deed from W. B. Ellis to W. A. Lemly, which is registered in Madison County, is definite enough to notify the defendant of the particular nature of the cause of action, and this is the chief purpose in *Page 178 
requiring publication to be made. The context of the affidavit would lead to the inference that Madison County is in this State, nothing (209) appearing to the contrary. The same kind of reference is once made to the county of Forsyth, that is, without naming the State of which it is a part, although it elsewhere appears that a county of this State is intended. The allegation is at least sufficient to inform the defendant of the deed to which reference is made, as it does not appear that there ever was any other deed between the same parties and certainly none registered in the county of Madison. The amount of damages claimed for the breach, while not of very much weight in identifying the cause of action, should not be entirely excluded from consideration in this connection.
What we have said applies to the first two grounds of objection. The third is clearly untenable. When the plaintiff alleges that there has been a breach of the contract, it is necessarily implied that there has been an eviction under a paramount title, or its equivalent, the adverse possession of the land at the time of the delivery of the deed by some one having such a title. Shankel v. Ingram, 133 N.C. 258; Price v.Deal, 90 N.C. 290. The allegation of a breach includes, of course, everything essential to constitute a breach of the covenant. It may not be a good allegation in a pleading, as being in the nature of the statement of a conclusion, but we cannot say that it is so radically defective when used in an affidavit for publication as to render it ineffectual. A fuller and more explicit statement of the facts would perhaps be better, as in affidavits, and especially in pleadings, the law seeks to deal with the facts and not the conclusions of the pleader from them. But the failure to comply with the requirements of the law as to the form of a pleading or of a statement in an affidavit falls short of proving that the affidavit is fatally defective, if otherwise it give sufficient notice of the nature of the cause of action. The cases cited by the defendant's counsel do not apply. In the first case, the affidavit referred (210) simply to a suit for specific performance of a contract to convey land in Craven County to which, it is alleged, the defendant was a proper party; while, in this case, special reference is made to the covenant of warranty in a deed from the plaintiff to the defendant, which is registered in Madison County, for the breach of which he claims $13,500 as damages. The other case cited was decided upon a different point. The defendant's counsel also contended that the defect in the affidavit is also to be found in the publication itself; but what we have already said is equally applicable to this objection. We hold that the affidavit and publication, when naturally and reasonably interpreted, were not calculated to mislead the defendant as to what was really meant and gave him sufficient notice to come in and defend his rights. *Page 179 
The defendant's next ground of objection is that the attachment could not be levied upon the bonds, as they were at the time in the possession of the Court (in custodia legis), having been deposited there by the plaintiff three days before the levy was made. It appears in the case that the bonds had been levied upon by the Sheriff under a prior attachment, and we see nothing in the case to show that the lien of this levy did not continue to the time of the second levy; and if so, the Sheriff had, in contemplation of law, the custody of the bonds, although he may have left them with the plaintiff for safe-keeping and they were afterwards turned over to the Clerk of the Court, for no rights of third persons, either creditors or purchasers, had intervened, so as to invalidate the levy as to them. It is admitted by the defendant, in his written motion, that the former levy was still in force; and if this be true, the Sheriff had the legal right to the possession. This, therefore, is the ordinary case of a second levy on property in the possession of the officer who made the first one. The act of the deputy was, of course, the act of the Sheriff, who was his principal "qui facit per alium facitper se." It was competent for the Sheriff, so far as the (211) defendant is concerned, to leave the bonds in the possession of the plaintiff as his bailee; and thus placed, they were still subject to the prior levy. Kneeland on Attachment, secs. 474 and 492. How could the defendant be prejudiced in such a case, if the Sheriff has the bonds forthcoming to answer the mandate of any process afterwards issued to him by the Court? But we do not see, if there was no prior levy by the Sheriff, why he could not levy on the bonds in the hands of the plaintiff or even after they were put in the custody of the Clerk. They were not, in a legal sense, in the custody of the Court by reason of the deposit with the Clerk, because the Court had never ordered any such deposit to be made, had not even recognized it, and there was no reason why the deposit should be made at that stage of the case. Besides, the Sheriff had, in law, the custody of them by virtue of the prior levy and was at least in constructive possession. The general rule undoubtedly is that property in the possession of the Court cannot be attached, as it is said then to be in custodia legis, and is protected not only on the ground of public policy, but for other good reasons. Kneeland on Attachment, sec. 410, et seq. The rule has been relaxed in some cases. See Williamson v. Nealy, 119 N.C. 339, where the course of decision in this State is fully set forth. But in this case the deposit, as we have shown, was not made by the authority of the Court and was not within the rule protecting property in custodia legis from a levy. The statute is broad in its language and requires the Sheriff to levy upon any of the property of the defendant in his county. Revisal, secs. 765-767. It appears that there is nobody who can complain of the levy except the *Page 180 
plaintiff, as the deposit was made by him. Besides all this, the Court, by its subsequent proceedings, has recognized the levy of the Sheriff as a valid one and has acted upon it as such. But if the Court had (212) the custody of the bonds by virtue of the deposit or of the Sheriff's levy — and the Court surely had it either the one way or the other — it will not be released, but the custody of it retained so as to await the result of the action and answer and satisfy any judgment that may be recovered. It is immaterial how the property was brought under the control of the Court, whether by attachment or some other equivalent and lawful act. Pennoyer v. Neff, 95 U.S. 714.
The objection to the evidence of Reynolds is not well founded, even if it was made in apt time. The witness testified that he is not interested in the event of the action, and it does not appear that he is. He may have an interest in the land, but this action was not brought to recover the land. The plaintiff already has it and requires no aid from the Court to complete the investiture of title. He sues for damages, and the witness is in no way interested in his recovery of them, and he must be so interested in order to disqualify him. Bunn v. Todd, 107 N.C. 266; Wetherington v. Williams, 134 N.C. at p. 279; Deaver v. Deaver, 137 N.C. 240. We do not see how the entries in the stock-book as to the value of the stock were competent to contradict the witness Reynolds. He did not make them, nor does it appear that they were made in such a manner as to be admissible against the plaintiff. They were res inter alios acta. But the witness testified substantially to the contents of the book, and in this way the defendant got the full benefit of the entries as evidence.
The Court properly entered a personal judgment against the defendant.Mullen v. Canal Co., 114 N.C. 8, which was cited by the defendant's counsel, does not decide otherwise. The Court merely holds in that case that, if there is a special appearance and a motion to dismiss, which is overruled, the entry afterwards of a general appearance and taking part in the trial of the case upon its merits, do not constitute a (213) waiver of the defendant's right to insist in this Court on his motion to dismiss, if he appeals from the judgment, and it was not intended to decide that the general appearance does not authorize the Court to render a personal judgment. The exception to the ruling on the motion to dismiss is fully reserved to the defendant, but this does not affect the right of the plaintiff to a personal judgment, which follows, as a matter of course, when there is a general appearance. Revisal, sec. 447; Wilson v. Seligman, 144 U.S. 47. When there is no general appearance, but merely a special one, and a motion to dismiss for defective service of the original process, or for defective substituted service by publication, and the motion is overruled, or if the defendant *Page 181 
does not appear at all, the Court acquires jurisdiction, where an attachment has issued or the res has otherwise been brought within its control only to the extent that the res will satisfy the plaintiff's recovery, and no general or personal judgment will be binding beyond that.Pennoyer v. Neff, 95 U.S. 714; Winfree v. Bagley, 102 N.C. 515, and Mayv. Getty, 140 N.C. 318, where the cases are collected. But a general appearance changes all of this and confers general jurisdiction of the person and cause of action, with the right to proceed personally against the defendant. It occurs to us that the defendant's counsel pursued the proper and only safe course, in making his general appearance, so as to protect the interests of his client.
The Court does not appear to have rendered a simple judgment for the debt, as if it were an action at law, with an order to the Sheriff to sell the attached property, in the nature of a venditioni exponas (Revisal, sec. 784; Atkinson v. Ricks, 140 N.C. 421; May v. Getty,140 N.C. 310), but it rather proceeded on the idea that the contract for the sale of the land had not been fully executed by the parties, and therefore granted equitable relief by directing that the bonds be sold by a commissioner. No harm can come to the defendant (214) from this form of judgment, as he will have the right to object to the sale if the property does not bring a fair price, whereas if it had been sold by the Sheriff, this objection to the sale would not be open to him.
While there was no error committed in the rulings so far considered, we do think the Court erred in its charge to the jury upon the fourth issue as to the damages. Let it be conceded, for the sake of the argument, that the Court correctly charged the jury as to how to value the stock, until he told them that they could consider, in that connection, "the testimony as to the payment of dividends and as to whether the plant had been a success or not," we think that instruction was erroneous. The value should have been determined as of the time the covenant was made, and according to the facts then existing, and not by what afterwards occurred. The parties did not and could not know with certainty whether the company would fail or succeed. They dealt with each other and made their own calculation upon the facts as they then existed and upon the situation as it then appeared to them. It, perhaps, was proper for the jury to consider the probabilities of success or failure, but when they were instructed that they might also consider actual eventualities, a factor was introduced into the computation which the parties could not have had in their minds at the time they fixed and agreed upon the consideration of the deed. It is what the parties thought, at the time of making their contract, were the values of the respective pieces of property sold, and not what they proved to be by *Page 182 
subsequent events, which could not be taken into the calculation beforehand, as they could not be forecasted with any degree of certainty. Matters beyond the human ken could hardly be said to have been within the contemplation of the parties, so as to become proper elements (215) to be considered in assessing the damages resulting from a broken covenant. The evidence and charge as to the actual success of the company were calculated to mislead the jury and produce a wrong appraisement of the value of the stock, and one that would necessarily increase the value of the Mountain Island tract of land, the title to which had proved to be defective.
There was error in the respect indicated, for which a new trial is ordered, but it will be restricted to the fourth and seventh issues as to damages, the seventh issue being included, as the amount awarded, in response to that issue, was made by the jury a part of the damages assessed under the fourth issue. The appellee will pay the costs of this Court.
New Trial.
Cited: S. c., 146 N.C. 222; Currie v. Mining Co., 157 N.C. 218.